45 So.2d 53 (1950)
TAYLOR
v.
CITY OF BIRMINGHAM.
6 Div. 843.
Court of Appeals of Alabama.
January 10, 1950.
Rehearing Denied February 7, 1950.
Arthur D. Shores, of Birmingham, John J. Abt, of New York City, Earl B. Dickerson, of Chicago, Ill., Harry Silver, of New York City, and Morel Montgomery, of Birmingham, for appellant.
Thos. E. Huey, Jr., of Birmingham, for appellee.
*54 Defendant's plea 2 is as follows:
2. Said complaint and each count thereof are unconstitutional, unlawful and void.
Said complaint and each count thereof constitute overt acts by the City of Birmingham in a willful and deliberate plan, purpose and design to deny to the defendant rights guaranteed to him by the Constitutions of the State of Alabama and of the United States and particularly the rights to free speech, free assembly, due process of law and the equal protection of the laws secured to the defendant by the Fourteenth Amendment to the Constitution of the United States.
Said complaint and each count thereof are unlawful, unconstitutional and void for the reason that they deny to the defendant rights guaranteed to him by the Constitution of the State of Alabama and of the United States and more particularly the rights to free speech, free assembly, due process of law and the equal protection of the laws secured to the defendant by the Fourteenth Amendment to the Constitution of the United States.
Said complaint and each count thereof are unlawful, unconstitutional and void for the reason that they constitute an attempt by the City of Birmingham to enforce against the defendant and compel his obedience to City Ordinance Number 859 of the City code of Birmingham, which ordinance as applied to this defendant deny to him rights guaranteed to him by the Constitution of the State of Alabama and of the United States and more particularly the rights to free speech, free assembly due process of law and equal protection of the laws guaranteed to him by the Fourteenth Amendment to the Constitution of the United States.
Defendant further says that the City of Birmingham, well knowing that defendant had not violated any of the ordinances referred to in this complaint and upon which it is based, nevertheless caused the arrest of the defendant, his confinement to jail and this prosecution against him for the sole purpose of denying to the defendant and preventing him from exercising his rights to free speech, free assembly, due process of law and equal protection of the laws, guaranteed to him by the Fourteenth Amendment to the Constitution of the United States.
Defendant further says as follows:
Defendant is a United States Senator, duly elected and sworn to occupy and faithfully perform his duties as such. That he was such at the time of his unlawful arrest. That he is a freeborn, white citizen of the United States, over the age of twenty-one years. That he had tendered to him prior to his arrest an invitation to speak at a meeting of a group of citizens of the United States, in the City of Birmingham, on May 1, 1948. He accepted said invitation to speak as he had a lawful and constitutional right to do to the group of citizens, known as "The Southern Negro Youth Congress."
Prior to his arrival in the City of Birmingham, Alabama, a place of meeting for the Southern Negro Youth Congress was necessary, where delegates or members to such Congress could assemble freely as they had a lawful right to do. Such place of meeting was desired for the free assembly of said citizens in order that this defendant could appear before them at such lawful and legal gathering to talk or speak to them concerning legal and lawful subjects or matters.
On or about April 25, 1948, the City of Birmingham, acting through its Commissioner of Public Safety, police officers and other officials of said city, entered into an unlawful and unconstitutional plan and conspiracy to prevent the Southern Negro Youth Congress from holding a lawful assembly in the City of Birmingham and to prevent the defendant from appearing before and addressing said assembly.
Pursuant to said unlawful plan and conspiracy, the City of Birmingham, acting through its Commissioner of Public Safety, police officers and other officials as aforesaid, attempted by intimidation, coercion, threats and unlawful arrests and detentions to prevent the Southern Negro Youth *55 Congress from securing a meeting house or a place in which to hold its lawful assembly.
A meeting house or place was obtained prior to May 1, 1948, known as the "16th Street Baptist Church" in Birmingham, Alabama for such lawful assembly as aforesaid. Delegates and members were informed of the place of such meeting and the time for the beginning of such business and the time for the appearance of this defendant before them as a speaker to them. Consent to assemble here was granted by the Reverend Luke Beard, Pastor of said Church.
Prior to the meeting date of May 1, 1948, Reverend Luke Beard, Pastor of said Church, who had previously granted permission for the meeting in said Church, was illegally and unlawfully detained by police officers or agents of the City of Birmingham, Alabama, and taken into custody by them and caused to escort said city police or agents to the City Hall of the City of Birmingham, Alabama. Then and there said Reverend Luke Beard was under unlawful arrest and detention and was then and there ordered and commanded by such police or agents of the City of Birmingham to immediately withdraw his previously granted permission for the use of said "16th Street Baptist Church" as a place for said meeting, all while he was being so illegally detained and denied his rights and lawful liberty. By reason of the nature of the commands and threats while being unlawfully detained as aforesaid, Reverend Beard did notify said "Congress" or its leaders that the permission for use of his church was withdrawn by him as a meeting place for them and for this defendant.
Permission was then requested and granted for the use of "St. Johns Methodist Church" by the Reverend H. R. Hughes to said "Congress" and this defendant in the City of Birmingham, Alabama, prior to the date and hour and moment of said meeting of said Congress and attendance by this defendant. Then said Reverend H. R. Hughes was thereupon, and immediately arrested unlawfully, detained of his freedom and liberty by the police and agents of the City of Birmingham. He, after being commanded so to do, did revoke his permission for the use of this church by said Congress and this defendant.
Permission was likewise granted to the Congress for the use of their Church, Chapel or Auditorium by the "Green Liberty Baptist Church" through its Pastor, Reverend H. E. Gilven. He was likewise unlawfully arrested and detained as were the others as aforesaid. Request was made by the Police Department upon Charles V. Henley, Grand Master, that he deny use of the Masonic Temple to the Southern Negro Youth Congress for its meeting. The deposit made on the Elks Rest, which auditorium had been procured for the purpose of entertaining the delegates, was returned on orders from the police department and contract for same cancelled.
"Alliance Gospel Tabernacle" in the City of Birmingham, Alabama was obtained by said agents of and for the Congress and said members and citizens did gather there on May 1, 1948 for legal and lawful purposes as aforesaid.
Pursuant to the unlawful and unconstitutional plan and conspiracy aforesaid and for the purpose of preventing the lawful assembly of said members and citizens, the City of Birmingham acting through its Commissioner of Public Safety, police officers and other officials of said city, on the afternoon of May 1, 1948, did cause a large number of police officers unlawfully and without cause to enter upon the premises of the Alliance Gospel Tabernacle while said lawful assembly was in progress and to arrest four members of said assembly, including the Pastor of said Alliance Gospel Tabernacle, take them to the city jail and lodge against them a false charge that they had violated the provisions of City Ordinance Number 859 of the Birmingham City Code of 1944, a charge of which said persons were subsequently acquitted in the Recorder's Court.
Notwithstanding the unlawful and unconstitutional attempts, aforesaid, the lawful assembly of the Southern Negro Youth Congress reconvened in the Alliance Gospel *56 Tabernacle on the evening of May 1, for the purpose of hearing an address by the defendant.
On the evening of May 1 defendant did lawfully present himself to the door of this lawful meeting place. Pursuant to the unlawful and unconstitutional plan and conspiracy, aforesaid, to prevent the defendant from addressing said lawful assembly, the City of Birmingham, acting through its Commissioner of Public Safety, police officers and other officials of said city, did then and there deny to the defendant the right to free speech and free assembly and did deprive him of due process of law and equal protection of the laws, all secured to him by the Fourteenth Amendment to the Constitution of the United States, in the following manner:
Defendant says, that upon his approach to a door of said "Alliance Gospel Tabernacle" this door then and there had a sign or placard pasted, nailed or secured above or near or over it with the following words and figures viz: "Colored Entrance". Defendant further says words were spoken by a police officer of the City of Birmingham, Alabama, who was at said door with his arm extended across the entrance of same, said words viz: "You will use the white door". Defendant states that he then and there replied to said police officer viz: "I prefer to use this entrance" and at the immediate time of so replying with those words defendant did then and there begin to move his body partly or otherwise as to enter or cross the thresh-hold of said door, all in a lawful, orderly manner in strict compliance to his Constitutional right.
Whereupon, as defendant's body or some part thereof contacted or touched or pushed against the arm of said police officer of the City of Birmingham, not in a rude and angry manner, the said police officer then and there unlawfully and in a rude and angry manner took hold of parts of defendant's body pushing or pulling, jerking or holding defendant away from said entrance and unlawfully preventing defendant from pursuing his lawful and legal rights of freedom, liberty and locomotion all in violation of his constitutional rights under the Fourteenth Amendment to the Constitution of the United States and prohibited defendant's exercise of the right to lawful assembly and to freedom of speech, and denied him due process of law and the equal protection of law. Said police officer of the City of Birmingham was then and there joined by three or more other police officers of the City of Birmingham, who then and there unlawfully assaulted defendant, held him, pulled him from a porch of said building near said door-way causing him to fall upon the ground, he being then and there held by all of said police officers. Defendant arose, then and there he was spoken to by a police officer of the City of Birmingham, viz: "You are under arrest." Defendant says he was not brought before any committing Magistrate, Trial Judge or one acting for such but placed in the jail of the City of Birmingham, Alabama, by said police officers of the City of Birmingham.
Defendant says that no affidavit was issued for him prior to his confinement to jail charging him with any offense known to the laws and Ordinances of the City of Birmingham. Defendant says he was thereafter and prior to the obtaining of any warrant or affidavit offered his release provided he would enter into an undertaking of bail in the sum of $300, which bail he did undertake and was released from said city jail of the City of Birmingham. Defendant says no affidavit or lawful, legal charge was made against him charging him with any offense until his trial date in the Recorder's Court of the City of Birmingham where he appeared at a much later date as required by such undertaking of bail as aforesaid. Such warrant or affidavit was not obtained or executed upon him until demanded by defendant through his counsel at said Recorder's Court at the hearing of said causes. Then an affidavit containing these counts was presented to him. He was tried in Recorder's Court, convicted and appealed to this Court on trial de novo.
Hence, defendant says said complaint here filed is void, said charges set out in same and each count are merely a subterfuge and an attempt to cause defendant to *57 defend himself for an offense here unlawfully charged and in fact and in truth for violating Ordinance 859, an unlawful and unconstitutional charge. That in the prosecution of these counts of this complaint, defendant's constitutional rights are being invaded. Defendant further says that each charge is based upon and is the direct result of an unlawful and illegal act of the City of Birmingham, Alabama, creating an unlawful, illegal circumstance which illegally was and now is an unconstitutional entrapment of defendant.
BRICKEN, Presiding Judge.
The appellant was arrested, charged and convicted in the Recorder's Court of the City of Birmingham of disorderly conduct. He filed an appeal bond in the manner and form prescribed by law, which was approved, and appealed his case to the Circuit Court of Jefferson County, where he demanded a trial by jury. In the circuit court the City filed a complaint charging him in separate counts with, (1), disorderly conduct, (2) assault and battery, and (3) resisting an officer. The trial court required the jury to elect and instructed them that if they found the defendant guilty, they could not return a verdict of guilty on more than one count of the complaint.
The jury returned a verdict finding the defendant guilty of disorderly conduct as charged in the first count of the complaint. The court adjudged him guilty and imposed a fine and sentence in accordance with verdict of the jury. From that judgment the appellant prosecutes this appeal.
Section 311 of the 1944 Code of the City of Birmingham reads as follows: "Any person who disturbs the peace of others by violent or offensive conduct, or carriage, or by loud or unusual noises, or by profane or obscene or offensive language, or any person who shall commit any act or diversion causing or tending to a breach of the peace, or any person who shall be guilty of lewd, immoral or indecent conduct, or any person who shall use any obscene or filthy language in a public place, or any person who shall commit any act or diversion tending to or calculated to debauch the morals of any person, shall be deemed guilty of disorderly conduct, and, upon conviction, shall be punished as provided in section 4 of this code."
The first count of the complaint filed in the circuit court reads as follows: "Comes City of Birmingham, Alabama, a municipal corporation, and complains that Glen H. Taylor, within twelve months before the beginning of this prosecution and within the City of Birmingham, Alabama, or the police juridiction thereof, did disturb the peace of others by violent or offensive conduct, or carriage, or by loud or unusual noises or by profane or obscene or offensive language, or did commit an act or diversion causing or tending to a breach of the peace, contrary to and in violation of Section 311 of the 1944 General Code of the City of Birmingham, Alabama."
The appellant filed a demurrer to the complaint as a whole, and a motion to strike the complaint, both of which were overruled, and both of which are assigned as error on the record. However, there is no brief or argument in support of either assignment of error. Appellant's brief contains this statement: "A. The action of the police was an attempt to enforce the City's segregation ordinance. Assignments of error One, Two, Three and Four are grouped for consideration at this point." Then follows about fourteen pages of argument in which the constitutionality of the segregation ordinances of the City is attacked. There is no intimation that the complaint is insufficient and the relevancy of the constitutionality of the segregation ordinance to the sufficiency of the pleading is not apparent. Neither is there any argument or brief in support of the assignment of error complaining of the refusal of the trial court to strike the complaint. In fact a motion to strike is not the proper way of testing the sufficiency of a complaint.
*58 Rule 10 of the Supreme Court, Code 1940, Tit. 7 Appendix, which is binding on this court, provides as follows: "Appellant's brief shall contain a concise statement of so much of the record as fully presents every error and exception relied on, referring to the pages of the transcript. * * * Following this statement, the brief shall contain, under a separate heading of each error relied on, separately numbered propositions or points, stated concisely, and without argument or elaboration, together with the authorities relied on in support of them and in citing cases, the names of parties must be given, with the book and page where reported."
In Wetzel v. Hobbs, 249 Ala. 434, 31 So.2d 639, the Supreme Court said: "As respects Rule 10, while we have said its provisions will be liberally construed, yet there must be sufficient compliance by tendering brief and argument in support of an adequate assignment of error that the court may ascertain the point relied on for a reversal."
After reading the entire brief for appellant we are still in the dark as to why it is claimed the complaint was insufficient. We conclude that no error was committed in overruling the demurrer or the motion.
The defendant filed a plea of not guilty, and a plea referred to as plea Number Two which will be set out in the report of the case. The City demurred to plea Number Two and its demurrer was sustained. Every legal defense set up in plea Numbered Two was available to the defendant under his plea of not guilty. There was no error in sustaining the demurrer to said plea. Stacks v. State, 20 Ala.App. 462, 103 So. 70. Moreover assignments of error III and IV are not supported by brief as required by Rule 10, supra.
Assignment of error V is not argued and is thereby waived.
The evidence in the case is practically without conflict and shows without dispute that on May 1, 1948, appellant was a candidate for Vice President of the United States on the Henry Wallace ticket. He was invited to address a meeting of the Southern Negro Youth Congress in Birmingham, Alabama, on that date; the meeting was held in the Alliance Gospel Tabernacle, a Negro house of worship, located on the corner of Sixteenth Street and Seventh Avenue, North, in said city.
The building, which appears to have been an old residence, had two entrances, one for whites on the Sixteenth Street side, and one for Negroes on the Seventh Avenue side. Each entrance was marked by a sign. The sign on the white entrance read, "White Entrance." The sign on the Negro entrance read, "Colored Entrance."
Those in attendance on this session of the Youth Congress segregated themselves. The whites entered the white entrance and the Negroes entered the colored entrance. The jury had a right to find and doubtless found that this was in accordance with the arrangements that had been made by the church for holding the meeting and that those in attendance, up to the time appellant arrived, respected the arrangements made by the church.
Appellant arrived in Birmingham the morning of May 1, 1948. He was interviewed by some newspaper men on his arrival at the Terminal Station, and was asked if he knew that Birmingham had a segregation law and that the police commissioner might have him arrested if he violated that law. His reply was "the police commissioner can go to hell."
About 10:30 A.M. of the same day, one Seymour Linefield, who, the record shows, represented appellant, and was "a big man in the Wallace campaign," verbally requested the police commissioner to furnish appellant police protection, and at 11:05 A.M. of the same day, he confirmed his oral request for police protection by a telegram to the police commissioner in which he repeated that request and asked specifically for two officers for appellant "during his twenty-four hours stay in Birmingham." The police commissioner ordered the Chief of Police to furnish appellant with police protection.
Appellant was scheduled to speak at the church that night, and about 9:00 P.M. he arrived near the corner of Seventh Avenue and Sixteenth Street in a taxicab, alighted, *59 and talked for several minutes with a group of twelve or fifteen people there to greet him. He then walked up Seventh Avenue to the Negro entrance of the building. As he approached, a police officer, on the porch near the door, courteously informed him that that entrance was the colored entrance; that the white entrance was around on the Sixteenth Street side, and requested him to "please use that entrance." Appellant was some five feet from the officer when he was thus informed. He continued walking towards the officer, who was in uniform, and the officer repeated the statement, whereupon appellant said: "I am going through this (colored) entrance. The officer then stepped in front of the entrance, and when he did, appellant lowered his right shoulder and "bumped" into the officer and knocked him back a couple of steps against the wall. Appellant then backed a couple of steps and started towards the officer again. The officer braced himself and after the appellant had bumped the officer the second time, the officer seized appellant by his arms and they started "tussling" and in the struggle the officer and the appellant either left or were pulled off the porch on to the ground. Some other officers came up about that time. Appellant was struggling and they attempted to escort appellant to a police car twenty feet distant. Appellant still struggling, with the officers, tripped over a wire which ran along the side of the lot. A number of people present started crowding in. The appellant regained his feet, drew his fist back and said: "You Sons of bitches can't do this to me." Appellant was informed that he was under arrest and that he had better come along peacefully. He continued to struggle with the officers until a friend, probably his secretary, told him to go along peacefully. Appellant then entered the police car as he was ordered to do, "talking very loud." When admonished to keep quiet appellant replied: "I don't give a God damn who hears me." He was then driven to the City jail in the police car where he made an appearance bond and was released.
The appellant admitted the use of the profane language, he further testified: "I wouldn't dispute any of these witnesses," referring to several witnesses who had testified for the City. Appellant denied that he was prepared to use force to effect an entrance into the building. He testified: "I wasn't prepared to use any force. I only wanted to test the ordinance," referring to the segregation ordinance of the City. Appellant admitted that he was "very excited."
We have read the record with care and we are unable to find anything in the record to support the contention in appellant's brief that "the police were obviously attempting to arrest the defendant (appellant) in order to enforce paragraph (b) of the segregation ordinance." Neither is there any basis for claiming that the police were attempting to prevent appellant from making a speech on that occasion. The appellant was allowed to undertake to show that the Chief of Police had stated that the meeting could not be held in that building, but he failed to do so. On cross examination of officer Casey, the officer on duty near the door, the following questions were propounded, and the following answers returned:
"Q. Mr. Casey had you been told by Chief Eddings or any one that that meeting could not be held in this Tabernacle, we have described, by the organization known as the Southern Negro Youth Conference? A. No sir.
"Q. Had you ever been told to prevent that meeting? A. No sir.
"Q. Had you been told to arrange or prevent any particular seating of individuals in that building? A. No, sir.
"Q. What occasioned Mr. Casey, of you stopping the defendant, this defendant Senator Taylor at this door? A. Sir, to inform him where the white entrance was.
"Q. You instructed the defendant not to enter that colored door? A. I told him this was the negro entrance, please use the white entrance on the side."
There was no attempt to arrest the appellant until after he had assaulted the police officer at the door by bumping into him and knocking him back a couple of steps against the wall. If this was appellant's idea of "testing" the segregation ordinance it was a method not available to him.
*60 The church had a right to insist on segregation on their own property; it had a right to insist on members of the white and black races using separate entrances; it had a right to post signs on the building designating a white and a Negro entrance, without regard to any segregation ordinance. If the appellant sought to force his way into the building in a way and manner contrary to the arrangements that had been made by the church, he might be regarded as a trespasser ab initio. Such conduct had a tendency to bring about a breach of the peace. If appellant was not agreeable to using the entrance the church had designated for him to use he was privileged to abandon his contemplated address instead of resorting to force. We conclude there was no error in submitting the case to the jury.
Assignment of error VII complains of the refusal of the trial court to give thirteen written charges requested by appellant in writing. All the charges are lumped in this one assignment of error.
In our case of North Alabama Traction Co. v. Taylor, 3 Ala.App. 456, 57 So. 146, 147, this court said, through Presiding Judge Walker: "In the brief of the counsel for the appellant, it is stated that `charges 12, 13, 17, 18, 19, 21, and 24 should have been given;' * * *. The charges mentioned, considered together, involved several separate and distinct propositions. This summary method of dealing with a number of rulings involving different propositions is not a compliance with the requirement of the rule governing the method of preparing a brief in behalf of the appellant that each ground of error insisted on be `separately presented and numbered in proper order.'"
Assignment of errors VIII and IX each deal with a number of rulings involving different propositions. Nowhere in the brief are we referred to the page of the transcript where the alleged errors are supposed to be shown, nor is each error separately presented as required by the Supreme Court Rule.
Assignment of error X complains of the insufficiency of the evidence and that the verdict is against the weight of the evidence. The appropriate way of invoking the judgment of the trial court on the weight of the evidence is by a motion for a new trial on the ground that the verdict is contrary to the weight of the evidence. If the motion is overruled, the ruling of the court below may be reviewed here. There was no motion for a new trial in the court below and no ruling of the trial court on the weight of the evidence is presented to this court for review.
Appellant refers to assignment of error 15 on page 34 of his brief. We find no assignment of error 15 in the record.
The claim that, "the action of the police in using force to bar defendant's entry to the Tabernacle was an attempt to enforce a law which is unconstitutional on its face," is entirely without merit and wholly unsupported by the record.
It clearly appears that the police did not use force to prevent defendant's entry to the Tabernacle. The defendant unjustifiably resorted to force, at least the jury so found, in an effort to override established custom, and the arrangements that had been made for him. He virtually admits as much. He was not on trial for conduct unbecoming a United States Senator, nor was the court below concerned with his effort to obtain publicity in connection with his candidacy.
The trial court was careful to screen the case of every suggestion that might have been prejudicial to him.
The judgment appealed from is due to be affirmed. It is so ordered.
Affirmed.