20 So.2d 533

**HOCKENBERRY v. STATE.**

**6 Div. 259.**

Supreme Court of Alabama.

Jan. 11, 1945.

Rehearing Denied Feb. 1, 1945.

370

Frank Ball and Edw. A. Ling, both of Bessemer, for appellant.

Wm. N. McQueen, Acting Atty. Gen., and John O. Harris, Asst. Atty. Gen., for the State.

GARDNER, Chief Justice.

The appeal is from a judgment of conviction for the offense of rape, with the imposition of the death penalty. Defendant's companion in crime was Daniel F. Reedy. These two acted jointly in all that was done, the necessary details of which are outlined in the case of Reedy v. State, 20 So.2d 528.[1] They were separately indicted; but in open court, as appears upon the minutes, this defendant, in his own proper person and by counsel, requested that he be tried jointly with the defendant Reedy. The request was granted, and the two were jointly tried, with, however, separate verdicts entered in each case and separate appeals prosecuted to this Court. The records in the two cases are identical.

The proof as to the offense of rape, with all its revolting details, was without dispute. The defense as to each defendant was rested upon the plea of not guilty by reason of insanity. The proof offered to support the insanity plea as to this defendant varied somewhat from that offered in behalf of defendant Reedy, but to no marked degree. As to this defendant, his mother testified in his behalf. Her evidence discloses that at defendant's birth he was a normal child, and so remained until he reached the age of fourteen. When he was that age, the mother and father separated. She insists that after that age he was depressive, impulsive, sneaky at times, and some different from other boys. Upon separation of the parents, the defendant lived with his mother

1 Ante, p. 363

until 1942, in which year he was convicted of an attempted assault upon some unnamed woman, for which he served a year's imprisonment. After this, he lived with his father a while, got a job, but didn't work very long. Then he again got into trouble of the same nature for which he had previously been imprisoned, and for this latter offense the court sent him to the Gallinger Municipal Hospital in Washington, D. C. There he remained in the psychopathic ward for some eight months, when he and Reedy effected their escape, as noted in the Reedy case.

The mother thought that he was abnormal and of unsound mind. There is in the proof no indication of any hereditary trace of mental disorder. As to the two expert witnesses whose depositions were taken in behalf of this defendant, there appears some difference of opinion. Dr. Gilbert is the Chief Psychiatrist at the Gallinger Municipal Hospital, and has so served since October 1, 1933. He has general supervision and direction over the Psychiatric Department of the hospital. He was acquainted with this defendant, whose examination was a part of his official duties. He states defendant was admitted June 11, 1943, and escaped February 1, 1944. His admission was for mental observation. In answer to the inquiry, if at the time of his escape this defendant appeared to be suffering from mental disorders, Dr. Gilbert answered: "The disorder of personality that it was believed Joseph Hockenberry was suffering from was not of such nature as to cause him to be considered of unsound mind." In answer to another inquiry, he further stated: "It is my opinion that during the period that Joseph Hockenberry was confined in the Psychiatric Department of Gallinger Municipal Hospital that he in a general way had the mental capacity to distinguish between right and wrong as applied to rape and similar criminal offenses."

Dr. Gilbert was then asked as to whether or not, in his opinion, defendant, although knowing right from wrong, had so far lost the power to choose between right and wrong, and to avoid doing such an act, as that his free agency was at the time of the commission of the offense destroyed. He replied: "Not under all circumstances, and then his ability to choose between right and wrong was impaired only to a limited degree." Asked as to whether or not the offense of rape committed by the defendant was so connected with his mental disease in the relation of cause and effect as to have been the product of it solely, the witness replied: "No. Not solely, but contributed to in some degree by an uncontrollable impulse." He further stated that the defendant had a personality disorder characterized by fundamental instability manifest in early life, and giving rise to delinquency in the juvenile period, with more serious offenses later on.

Dr. Perretti, also a psychiatrist, and engaged in work of that character at the Gallinger Municipal Hospital, testified by way of deposition for the defendant, that he possessed mental capacity to distinguish between right and wrong as applied to rape and similar criminal offenses. But he further stated that he was of the opinion that, by reason of the duress of his mental disease, he had so far lost the power to choose between right and wrong, and to avoid doing such an act with which he was here charged, as that his free agency at the time of the commission was destroyed. This witness further testified that defendant, in his opinion, was suffering from a "psychoneurosis of the obsessional and compulsion type," a mental disorder which is curable, but of which it was not likely a cure had been effected on February 11, 1944, the date of the commission of this crime.

█ Of course, as to the defense of insanity, the rule established by statute, as well as our decisions, is that it must be clearly proved to the reasonable satisfaction of the jury, and the burden of proof rests upon the defendant in this regard. We have in a general way outlined the proof upon which the defendant rests his case. That as to the experts discloses a difference of view as to this defendant, though each agrees that he had mental capacity to know right from wrong. But the testimony of Dr. Gilbert, the Chief Psychiatrist, clearly tends to disclose his opinion of mental responsibility.

█ In any event, the rule is well understood that the opinion of expert witnesses as to insanity is not conclusive upon the jury. They are to be weighed like other evidence, and it is the right of the jury to reject it all if they so determine. George v. State, 240 Ala. 632, 200 So. 602.

At the time of the commission of this offense, defendant was nearing his twenty-first birthday, having been born February 18, 1923; and according to his mother's

372

testimony concerning his education, had had a year or two in junior high school. And the great preponderance of the testimony of lay witnesses who had seen and observed the defendant was to the effect that he appeared to be normal. The various other crimes (as disclosed by the voluntary confessions) committed immediately preceding the present offense by defendant and his companion, Reedy, as outlined in the Reedy case, appear to have been cunningly devised, and perpetrated in such a manner as to avoid detection.

But we forego further discussion, as what has been said suffices to disclose our conclusion that the trial court correctly ruled in declining the motion for the appointment of a sanity commission, as well as in the order denying the motion for a new trial, all of which is sufficiently discussed in the companion case of Reedy v. State. Other questions raised by this defendant have also been sufficiently treated in Reedy v. State, and need no repetition here. Indeed, aside from the matter of the insanity defense herein treated, the opinion of this Court in the Reedy case answers all purposes, and is here adopted as a part of this opinion.

The record in this case has been read with care, separate and apart from that of Reedy v. State, and we find nothing upon which to base a reversal of the judgment rendered. It follows, therefore, that the judgment of conviction is due to be affirmed. It is so ordered.

Affirmed.

All the Justices concur.