58 So.2d 764

**DUKE v. STATE.**

**7 Div. 146.**

Supreme Court of Alabama.

April 24, 1952.

Rehearing Denied May 15, 1952.

Scott & Dawson, Fort Payne, and Roy D. McCord, Gadsden, for appellant.

342

Si Garrett, Atty. Gen., and M. Roland Nachman, Jr., Asst. Atty. Gen., and Wm. H. Sanders, Montgomery, of counsel, for the State.

STAKELY, Justice.

Dwight Duke, the appellant, was tried under an indictment charging him with the offense of first-degree murder. Upon his trial he was found guilty of murder in the second degree and his punishment was fixed by the jury at 25 years in the state penitentiary. On the trial he denied the offense entirely and offered an alibi. A motion for new trial was denied. From the foregoing judgment and sentence the appellant brings an appeal to this court.

The evidence presented by the state tended to show the following. On the night of December 31, 1950, J. F. Giles and his wife Media Floy Giles attended church services near their home in DeKalb County. J. F. Giles returned home first for the night. When his wife returned home somewhat after midnight he opened the door for her and they both went to sleep in a bedroom, a room opening off the entrance hall of their home. The door to this room was locked with a thumb latch.

They were awakened by the breaking down of the door and by the curses of a man identified by J. F. Giles as the defendant, Dwight Duke, who entered the room and threatened them both with his shotgun. Mrs. Giles arose to remonstrate with the intruder. She addressed him by the name of Dwight. He declared with an oath that he intended to kill both of them. She tried to push him out of the room and as she did so, the intruder fired and she fell, mortally wounded, in the hall outside the bedroom door.

By this time J. F. Giles had seized his own shotgun, which he kept in the room, and had gone to the door. The assailant had now gone outside of the house. He

continued to curse J. F. Giles and fired his gun three times more. Then he drove away in his truck. J. F. Giles did not fire at him but ran immediately to the home of a neighbor and summoned help.

J. F. Giles not only identified the defendant as the one who fired the fatal shot at his wife but also described the truck which corresponded with that owned by the defendant.

Officers who investigated the killing found a 16–gauge shotgun shell on the floor of the hall. It was marked and turned over to ballistics experts in the State Department of Toxicology. A 16–gauge shotgun which the defendant admitted he had borrowed from a friend and which defendant admittedly had in his possession during the time of the killing, was seized by the sheriff at the home of its owner, the defendant having returned it there just a short time before the seizure by the sheriff.

Dr. C. J. Rehling, Director of the State Department of Toxicology and a qualified expert in firearms, testified that he made a microscopic examination of the firing-pin impression on the shell found at the scene of the crime and compared it with the impression on two test shells fired from the gun which the defendant had during the time of the killing. He showed that as a result of his examination, the shell found at the scene of the killing had been fired from the gun which the defendant admitted having had in possession.

A neighbor of the Giles heard the shots and heard a truck or car pass by on the road coming from the direction of the Giles' house.

There was evidence tending to show that the defendant, who had formerly been a tenant farmer on the Giles' farm, bore ill will toward them and had threatened to get even with them. Some two or three months previous to the killing, he had been arrested on the complaint of J. F. Giles for trading mortgaged property. The charge was apparently dropped but the defendant moved away from the Giles' farm shortly thereafter.

The defendant denied that he had anything to do with the killing and offered an alibi. According to him he left his home near Centre, Alabama, with a borrowed shotgun in his possession on the Friday preceding the killing. Further according to him, he went to Birmingham and stayed there until Sunday morning, December 31, at which time he went to Bradford, Alabama, where some chicken fights were in progress. There were a considerable number of people at these fights and several witnesses testified to having seen him there in the afternoon and some as late as dusk.

The defendant testified that he left the chicken fights at dusk, pawned a radio with a friend for $10, obtaining more whiskey—he had already been drinking during the day—and started for home in his truck. According to him he stopped and slept in his truck and finally arrived in Gadsden about daybreak.

The last person to see the defendant on this night and to corroborate the story of the defendant was Charlie Green. He testified that he was out coon hunting and the defendant drove up in his truck about one o'clock a. m. and asked him where he could obtain some whiskey. The witness testified that defendant appeared to be drunk. No witness was produced by the defense who saw the defendant later that night. The time of the shooting was not exactly fixed, but it occurred about 2:30 or shortly prior thereto when Sheriff Garrett testified he arrived at the Giles' home.

In rebuttal there was testimony offered by the state of several witnesses who had attended church services which Mr. and Mrs. Giles had attended. These witnesses testified that they saw the defendant standing outside the church that night between eleven and twelve o'clock and one had exchanged remarks with the defendant at that time.

■ I. A ground for the motion for a new trial is that one of the jurors, Travis W. Payton, is a cousin by consanguinity to the son-in-law of the deceased person, Mrs. Media Floy Giles. As a matter of fact Travis W. Payton is a first cousin of the son-in-law of the deceased, Mrs. Media Floy Giles. Under subsection 4, § 55, Title 30, Code of 1940 a ground for

challenge of the prospective juror is that he is connected by consanguinity within the 9th degree. It is obvious that the deceased and the juror are not related by consanguinity at all, because there is no blood relationship between the two. Vol. 8A, Words and Phrases, page 177.

A further ground for the motion for new trial is that since the juror, Travis W. Payton, is a first cousin of the son-in-law of the deceased, he is brought by affinity within the degree of kinship set out in subsection 4, § 55, Title 30, Code of 1940 and therefore was subject to challenge as a juror. Subsection 4 of this section provides that persons may be challenged who are connected by affinity within the 5th degree (computing according to the rules of the civil law) with the person alleged to be injured. But the deceased and the juror are not related by affinity within the 5th degree. The civil law method of computing degrees of kinship is to begin the count with one of the persons in question and proceed up to the common ancestor and then down to the other person, calling it a degree for each person both ascending and descending. The number thus counted expresses the degree of kinship. Danzey v. State, 126 Ala. 15, 28 So. 697; Owen v. State, 255 Ala. 354, 51 So.2d 541. It is obvious that the deceased and the juror are not related within the 5th degree. In fact they are not related by affinity at all. The relationship of affinity is that between one spouse of a subsisting marriage—in this case Mrs. Media Floy Giles, the deceased,—and the blood relatives of the other spouse. Kirby v. State, 89 Ala. 63, 8 So. 110, 111; Lowman v. State, 161 Ala. 47, 50 So. 43; Cambron v. State, 227 Ala. 575, 151 So. 443. The relationship between the parties here involved is a more remote one, viz., between the kinsmen of two persons married, the daughter of the deceased woman in this case and the first cousin of the daughter's husband. The rule was stated in the case of Kirby v. State, supra, as follows.

"'Affinity properly means the tie which arises from marriage betwixt the husband and the blood relatives of the wife, and between the wife and the blood relatives of the husband. But there is no affinity between the blood relatives of the husband and the blood relatives of the wife.' The juror Bryant being a cousin of the step-father of the deceased was related by affinity to the mother of deceased, but bore no relation to deceased himself, and was a competent juror."

II. It is contended by the appellant that there was a separation of the members of the jury during the course of the trial. The jury had been excused for a short recess and had been conducted to the jury room down the corridor from the court room. When court was ready to resume, two deputy sheriffs went to the jury room to conduct the jurors back. Eleven of the jurors returned with one of the deputies. The twelfth juror was in a lavatory or toilet which opens off of the jury room. The other deputy saw that one juror was not with the others, told him to hurry up because the others were leaving and waited for him at the door of the jury room. They arrived a minute or less after the other jurors. The twelfth juror immediately took his seat in the jury box. The deputy sheriff who had remained with this juror was called to the stand together with the sheriff and one of the defense attorneys who observed the incident. This deputy sheriff testified that the juror spoke to no one and that no attempts at communication were made during the juror's separation.

Under these circumstances the state must show by sufficient evidence that the jury during the separation was not subject to contacts or influences that may have biased their verdict. In other words, the burden rests on the state clearly to show that no injury or prejudice to the defendant resulted. Mitchell v. State, 244 Ala. 503, 14 So.2d 132; Nelson v. State, 253 Ala. 246, 43 So.2d 892. We consider that the state by the proof sustained the burden which rested on it with reference to this particular incident.

III. A shotgun shell was offered in evidence by the state and admitted, defendant's objection to the admission of the

shotgun shell being overruled. The state's witness, Deputy Sheriff M. H. Chadwick, identified the shotgun shell which he had obtained and marked at the scene of the crime. This shell, so identified, was accepted in evidence over the defendant's objection. The shell was relevant and competent evidence. The marks on the brass cap of the shell left there by the firing-pin formed the basis of the testimony of the ballistics expert that the shell had been fired by the gun in question. There was objection that the mark put on the shell by the deputy sheriff changed its condition from that in which it had been found. According to the testimony of the deputy, however, he merely wrote his initials on the shell and cut the paper part with a knife. He did not in any way deface the brass part of the shell. It was only this portion of the shell which was used by the experts in making their identification. The particular shell is before this court and has been inspected. It appears to be obvious that the marking on the shell was placed there merely for the purpose of identification.

IV. Complaint is made of overruling objections to the testimony given by Deputy Sheriff Chadwick concerning a threat made by the defendant several weeks prior to the killing. In substance the testimony shows that defendant said, "that he would get even with Mr. and Mrs. Giles if it was the last God damn thing he ever done." Declarations of an accused prior to the homicide, expressing ill will or menace against the deceased, are admissible in evidence. The language used need not necessarily be a threat to take the life of the deceased. Drake v. State, 110 Ala. 9, 20 So. 450; Knight v. State, 160 Ala. 58, 49 So. 764; Husch v. State, 211 Ala. 274, 100 So. 321. There was no error in this ruling.

V. There was no error in refusing Charge I requested by the defendant. It is confused, inaccurate and misleading. It places undue emphasis upon a test of the sufficiency of circumstantial evidence, when there was in this case direct testimony of the defendant's guilt. McCoy v. State, 170 Ala. 10, 54 So. 428.

Charges J and L involve the burden of proof necessary for conviction. This matter was adequately covered in the court's oral charge. Furthermore there was no evidence that any other person committed the murder or was implicated in the killing. Accordingly these charges in making this suggestion are abstract. Owens v. State, 215 Ala. 42, 109 So. 109. There was no error in refusing Charges J and L.

There was no error in refusing either Charge O or P. These charges emphasize the law of circumstantial evidence although, as hereinabove pointed out, there was direct proof of defendant's guilt. McCoy v. State, supra.

Charges 2, 3 and 4 in their implication that Frank Giles, the husband of the deceased, feared prosecution of himself for the murder, were improper, argumentative and not grounded on any facts shown in the evidence. No evidence was introduced tending to show any motive or reason that Frank Giles might have had for killing his wife.

It is enough to say of Charge 5 that it was fully covered by the court's oral charge.

Charge 6 is not a correct statement of the law applicable to expert testimony. Such testimony is to be weighed like other evidence. Hockenberry v. State, 246 Ala. 369, 20 So.2d 533. "The effect, weight, or credibility of such evidence are questions for the jury, when considered in connection with the other evidence material to the opinion so expressed." Crawford Johnson & Co. v. Pryor Motor Co., 219 Ala. 108, 121 So. 388, 389.

We have carefully considered the entire record and find no error.

Affirmed.

LIVINGSTON, C. J., and FOSTER and SIMPSON, JJ., concur.