93 So.2d 435

**Carl Frank HAND**

v.

**STATE.**

**6 Div. 287.**

Court of Appeals of Alabama.

Oct. 16, 1956.

Rehearing Denied Nov. 13, 1956.

Matt Murphy, Jr., Birmingham, for appellant.

John Patterson, Atty. Gen., and Robt. Straub, Asst. Atty. Gen., for the State.

PRICE, Judge.

Appellant, Carl Frank Hand, was indicted for murder in the first degree. He was convicted of murder in the second degree. His punishment was fixed at imprisonment for a term of fifteen years.

The defendant pleaded "not guilty" and "not guilty by reason of insanity."

The evidence for the State tends to show that on September 4, 1954, appellant, a white man, killed George Smith, a Negro, by shooting him three times with a revolver. Police officers testified the killing occurred in an alley in a thickly populated Negro section. The appellant continued to fire the gun after the officers arrived and did not stop until one of the officers fired twice into the ground at his feet.

It was shown that just prior to the homicide appellant went to the house of a Negro woman named Eddie Mae Stinson and demanded that she take him to the home of one "Fats." When she attempted to point out the home of "Fats" appellant threatened her and forced her to go with him. Appellant entered the house and when told "Fats" did not live there, threatened to "kill him a Negro" before he left the alley. When appellant started back up the alley deceased came to his door and asked appellant not to fire the gun because there were children in the alley. As deceased walked off the porch appellant began shooting.

The officers testified that appellant made a statement to them in which he said he had been in the alley selling chickens earlier in the afternoon and a Negro named "Fats" had robbed him. He then bought a pistol and went back up there. Deceased came out of his house and asked if he was hunting trouble. Smith had a gun and appellant started shooting. Somebody else had a gun and fired at appellant.

The officers also testified they saw the appellant an hour or so before the killing. He was drinking heavily and told the officers he had been drinking in the alley with the Negroes and "Fats" had struck him on the head and robbed him, and he requested the officers to go and see about getting his money back.

The evidence as to the killing was uncontradicted.

As to the plea of insanity the State introduced numerous records of Bryce Hospital showing that appellant had been a patient at said institution on two occasions prior to his commitment for observation after the homicide, together with a letter from Dr. J. S. Tarwater, the Superintendent, dated May 6, 1955, addressed to the solicitor stating that, "It is the belief of the hospital staff, in which belief I concur, that Carl Frank Hand was on the day of the occurrence of the act for which he is charged sane and competent. We further believe that as a result of his emotionally unstable personality he became upset after being placed in jail and duly charged with an offense."

The appellant offered evidence to show that his condition was diagnosed, at Bryce Hospital on October 26, 1954, as "schizophrenic reaction, schizo-effective type." One of appellant's witnesses, Dr. Morton, a psychiatrist, testified he examined appellant at the county jail on October 24, 1954, and found him to be a potentially dangerous, homicidal paranoid, and that, based upon his review of his psychiatric history together with his examination of him, it was his opinion that appellant was of unsound mind at the time of the homicide.

Mr. Earl Russell testified that prior to the time appellant was first admitted to Bryce Hospital he was peddling with witness' truck and disappeared with a truck load of produce and stayed away for more than a week. On the day of the homicide he saw him at a cafe. Appellant said he had had some trouble with colored people who had robbed him of his money and broken his glasses. At that time he did not look right and in his opinion was insane.

█ "The defense of insanity must be clearly proved to the reasonable satisfaction of the jury and the burden of proof in this regard rests on the defendant. Hockenberry v. State, supra [246 Ala. 369, 20 So.2d 533]; Lee v. State, 246 Ala. 343, 20 So.2d 471; Sec. 422, Title 15, Code of 1940." Smith v. State, 257 Ala. 47, 57 So.2d 513, 515.

█ The conflicting evidence on the issue of insanity presented a question for the jury's determination. Appellant's requested charge 4 was properly refused. We are further of the opinion that the verdict and judgment is not contrary to law and the evidence and the motion for a new trial was properly denied.

During the opening argument by the deputy solicitor the following occurred:

"Mr. Murphy (referring to opening argument of Mr. McCall): Now, we object to that, Your Honor. He will not be turned loose on the public. He will be admitted to Bryce Hospital.

"Mr. McCall: I haven't finished my statement.

"The Court: Well, let him finish what he is saying. Let him finish.

"Mr. Murphy: We except.

"Mr. McCall: Gentlemen of the jury, in the face of this letter, if you found him not

guilty by reason of insanity, the court could, it is true, send him back down there for observation and treatment, but he has been under the view of those there in attendance, what could they do? They have found him sane and competent, and they could turn him loose on the public.

"Mr. Murphy: Judge,—

"Mr. McCall: I am not misstating anything. ·

"Mr. Murphy:—I am going to object to Mr. McCall arguing to the jury what they could and what Bryce Hospital would do if they rendered a judgment by reason of insanity. I think it is highly inflammatory; it is just like an argument if you send a man down there to Montgomery he will be paroled, and we object on the ground it is immaterial, irrelevant, illegal and incompetent. We make a motion for a mistrial.

"The Court: Well, I will overrule your motion for a mistrial.

"Mr. Murphy: We except.

"The Court: Gentlemen, of course Mr. McCall doesn't know what they would do with him. I don't assume he is attempting to state what they would do with him. I think he does have a right to argue that in view of the fact that they have held him sane, that it is most probable that they might do the same thing again. I think that he has the right to argue that he assumes that they might do that, or—He doesn't know that they will do that. I think that gets the record straight. There is no evidence at all—nobody knows, neither Mr. McCall nor Mr. Murphy, knows that they would do that, hold him or turn him loose. Don't consider that angle of it.

"Mr. Murphy: We except to the remarks of the court.

"The Court: All right."

Appellant's sole argument in brief is that the remarks of the solicitor constituted reversible error. He cites and relies on the court's holding in Boyle v. State, 229 Ala. 212, 154 So. 575, as authority for his contention.

In Wise v. State, 251 Ala. 660, 38 So.2d 553, 556, the court had under consideration this statement of the Solicitor: " 'If he is insane, don't convict him, but if they put him in Bryce's, perhaps he may be back here in a few months.' " Defendant's objection was overruled, and the trial court made no comment to the jury regarding the argument.

The Supreme Court made this observation:

"We have often disapproved such argument. Originally it was held not to be reversible to overrule objection. McNeill v. State, 102 Ala. 121, 15 So. 352, 48 Am. St.Rep. 17. We have held that when objection is sustained or the jury properly instructed as to it, the error may be cured." (Citing numerous authorities, including Boyle v. State, supra.)

"But when objection is made and overruled, and the court does not properly instruct the jury in respect to the argument, our cases now hold that it is reversible error."

We think the court's instructions here were sufficient to eradicate the harmful effect of the solicitor's statement and that there was no reversible error in overruling the motion for a mistrial nor in denying the motion for a new trial based on the court's action in this respect.

The judgment of the trial court is affirmed.

Affirmed.