BOOKOUT, Judge.
Unlawful possession of marijuana for personal use; sentence: nine months imprisonment in the Tuscaloosa County Jail and a fine of $750.00.
The above charge arose out of an incident which occurred at the Memorial Coliseum on the campus of the University of Alabama on October 1, 1972. Appellant was a member of a rock music group performing at the University. The case was tried by the trial judge without a jury, by agreement.
Kathy Plowman, a witness for the State, testified that she and three female companions, while walking near the east side of Memorial Coliseum, observed the appellant sitting on the ground eating grapes and playing a guitar. The appellant spoke to the girls, showed them a small pouch and asked if they would like some marijuana or hashish.
Kathy Plowman stated that they had previously seen narcotics agents, which they recognized, circling the coliseum in an automobile. At the time the appellant offered them the marijuana, the witness saw the narcotics "agents drive around the corner of the building. The girls then began running away. The officers then stopped the girls, put them in their car and questioned them as to why they were running. Kathy Plowman stated that the officers took their purses and dumped them on the ground and searched them. The girls had no narcotics in their possession.
The officers’ attention was directed toward the appellant, who was still sitting on the ground a short distance from the group. One of the officers noticed a white bag or pouch on the ground a few feet from where the appellant was sitting. Officer Adams showed the pouch to Kathy Plowman, and she pointed to the appellant and said, “that belongs to him.” The evidence showed the pouch contained marijuana.
The appellant was placed in the police car and was advised of his constitutional rights at that time. Bryan Lane, manager of the rock group, then came to the police car and asked the appellant, in the presence of the officers, if the appellant had thrown the marijuana into the bushes, and he answered that he had. Officer James Adams testified as to the inculpatory statement made by the appellant at that time and also stated that the appellant replied to Lane, “I’m sorry, Bryan, I never meant to do anything to get the group in trouble.”
Officer Adams further testified:
“Bryan was upset, he was — visibly upset about the whole ordeal; and he told Eddy, he said, T warned ya’ll about using dope — ’ either in the country or the state, I just don’t remember what term he used. ‘Because it can get you in trouble.’ Well, Eddy again said that he was sorry, but he *1040 didn’t mean to get the group in trouble. And he repeated that statement or the gist to that statement several times, more than once and more than two or three times, while we were at the jail.”
Beverly Jean Watkins, testified for the appellant, stating that she had seen him in New Orleans the day before his arrest in Tuscaloosa. She said appellant had eaten dinner with two people named Sunshine Bear and Song Bear who told her that they had placed a large amount of a drug called “P.C.P.” in his food and that they had injected him with a large dose of L.S.D. after he had passed out. The trial judge reserved ruling on the admissibility of such testimony after the State objected to its hearsay nature.
Depositions from two British psychiatrists, Doctors Higginson and Sergeant, were admitted in evidence. They stated that appellant suffered from an “L.S.D. psychosis” upon his return to the United Kingdom on October 8, 1972. The depositions stated that appellant’s condition fluctuated from rational to psychotic. In the medical opinions of the psychiatrists, appellant was suffering from such psychosis on October 1. Also, counsel for appellant read selected portions of the depositions to the trial court in support of his contention that appellant was unable to form a specific intent to commit the offense. The prosecution likewise read portions of the deposition to the court to rebut the appellant’s contention in that regard.
I
Appellant argues that the testimony of Kathy Plowman was inconsistent and unclear; that she had poor recollection and was evasive; and that her prior record substantially impeached her as a witness. Those are jury-type arguments in their nature, more appropriate for consideration of the trial judge than for an appellate court. Inconsistencies in testimony go to the believability of that testimony. A prior conviction, likewise, has a bearing on the believability of the witness, but does not mean that her total testimony must be disregarded. The trial judge, sitting without a jury, was able to weigh those factors. He could have disregarded Kathy Plowman’s total testimony, or any part thereof. His decision, like that of a jury, will not be overturned where there is an inference which could be drawn from the evidence upon which he could base his finding of guilt.
Title 15, § 322, Code of Alabama 1940, establishes the scope of review on appeal from a non-jury, criminal case. In Stephens v. State, 50 Ala.App. 244, 278 So.2d 245 (1973), we stated:
“The appellate courts by authority of this section have the right to review the findings of a trial court sitting without a jury. However, where the evidence is heard orally by the trial judge, his findings have the weight of a jury verdict and will not be disturbed on appeal unless palpably wrong, unjust or contrary to the great weight of the evidence. Kelly v. State, 273 Ala. 240, 139 So.2d 326; Cooper v. State, 33 Ala.App. 407, 34 So.2d 188. In Norille v. State (1901), 131 Ala. 35, 31 So. 19, the Supreme Court of Alabama held that where a criminal case is tried by a court without a jury and there is no agreed statement of facts or any special finding of the facts by the judge, and no request for such finding, the conclusions of the judge upon the facts stand as a verdict of the jury and will not be revised on appeal.
“The court becomes the trier and finder of the facts from the evidence. He then becomes the sole and exclusive judge of the evidence, of its weight and sufficiency and he is the sole and exclusive judge of the credibility of the witnesses. It is he — not us — who had the opportunity to see the appearance and demeanor of the witnesses.”
Likewise see Gordon v. State, 54 Ala.App. 537, 310 So.2d 257 (1975).
Kathy Plowman’s accusation against the appellant, coupled with his statement of an inculpatory nature to Bryan Lane, if believed by the trier of the facts was sufficient to support the finding that the appellant was in possession of marijuana.
*1041 II
Appellant contends that Kathy Plowman’s accusation against him should have been inadmissible because it was made prior to her being advised of her right to remain silent. He further contends that, “no effort was made to inform Bryan Lane, who questioned Orforda in the presence of Officers Adams and Tucker that Orforda had the right to remain silent, and that any responses to questions posed by Lane could be used against Eddy Orforda at his trial.” Neither of these contentions bear any weight.
The rights enunciated in Miranda, v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), deal with the protection against self-incrimination accorded an accused, “while in custody at the station or otherwise deprived of his freedom of action in any significant way.” The Miranda warning does not apply to a witness making accusations against another party. The statement by Kathy Plowman was not self-incriminating; it incriminated another party, Eddy Orforda.
Likewise, the appellant’s statement to his manager, Bryan Lane, was not the result of interrogation by law enforcement officers. The appellant was in custody at the time and had been given the Miranda warning prior to his conversation with Lane. Beecher v. State, 288 Ala. 1, 256 So.2d 154 (1971); Truex v. State, 282 Ala. 191, 210 So.2d 424 (1968).
There is no requirement in the Miranda decision that police officers inform friends of an accused that the accused has a right to remain silent, before the friend is permitted to have a conversation with the accused. Here, the appellant had been apprised of his right to remain silent, and it is immaterial whether Bryan Lane knew that the appellant had been given such warning prior to Lane’s conversation with him.
III
In Carr v. State, 43 Ala.App. 642, 198 So.2d 791, cert. denied 281 Ala. 716, 198 So.2d 798 (1967), this Court stated:
“The question of insanity at the time of the commission of a crime is a matter to be determined by the jury from a consideration of all the evidence. The defendant in this case is presumed to be sane, and the burden of establishing his insanity to the reasonable satisfaction of the jury rests upon him. Title 15, Sec. 422, Code of Alabama 1940. See Boyle v. State, 229 Ala. 212, 154 So. 575; Pickett v. State, 37 Ala.App. 410, 71 So.2d 102, cert. den. 260 Ala. 699, 71 So.2d 107. In the Pickett case, supra, the cohrt said: “ ‘Even undisputed expert medical evidence is not conclusive upon the jury, but must be weighed like other evidence, and may be rejected by the jury. Hockenberry v. State, 246 Ala. 369, 20 So.2d 533; Fitzhugh v. State, 35 Ala.App. 18, 43 So.2d 831, certiorari denied 253 Ala. 246, 43 So.2d 839, certiorari denied 339 U.S. 986, 70 S.Ct. 1007, 94 L.Ed. 1388.’ ”
The testimony bearing upon the possible insanity of the appellant came from the hearsay testimony of Beverly Jean Watkins, that two people named Sunshine Bear and Song Bear told her that they had injected appellant with a large dose of L.S.D. shortly before his trip to Tuscaloosa. The trial judge had every right to disregard such rank hearsay.
The other evidence concerning the appellant’s sanity appears in the depositions of Doctors Higginson and Sergeant. The trial judge, sitting as a trier of the facts, had a right to consider that the examination of the appellant by the psychiatrists took place in the United Kingdom several days after the date on which the crime was allegedly committed.
The expert testimony was that the appellant’s condition fluctuated from rational to irrational. The trial judge had every right to believe that at the time of the commission of the offense, the appellant was rational, after reviewing the surrounding circumstances, i. e. his apology to Bryan Lane.
Likewise, in the deposition of Doctor Hig-ginson, he was asked if the appellant’s apol *1042 ogy to Bryan Lane (that he did not mean to do anything to get the group in trouble) would indicate any degree of awareness on the part of the appellant. Doctor Higgin-son stated that such sounded like a rational statement.
The appellant in the instant case did not establish his insanity at the time of the crime to the reasonable satisfaction of the trial judge. The judge was under a duty to weigh the expert medical evidence as he would any other evidence in the case which might have a bearing on the sanity of the appellant. Considering all the testimony as well as the depositions, we are of the opinion that the trial judge did not commit reversible error in deciding this issue adversely to the appellant. Breen v. State, 53 Ala.App. 588, 302 So.2d 562 (1974). A verdict of guilty concludes the issue of insanity at the time of the commission of the offense unless a preponderance of the evidence indicates palpable error. Such was not the case in this instance. Pierce v. State, 52 Ala.App. 422, 293 So.2d 483, cert. quashed 292 Ala. 745, 293 So.2d 489 (1973).
AFFIRMED.
TYSON, HARRIS and DeCARLO, JJ., concur.