TYSON, Presiding Judge.
On April 22, 1977, the Supreme Court of Alabama remanded this cause to this Court for a consideration of the merits of the appeal, determining that pursuant to this Court’s opinion and order of October 19, 1976, the trial court had proceeded to construct insofar as possible a correct transcript of the evidence pursuant to the provisions of Title 7, Section 827(3), Code of Alabama 1940, as amended. The transcript sent this Court by the Circuit Court is in the form of a narrative recital of the original evidence offered at trial except for com- *1167 merits from time to time interposed by defense counsel, the prosecuting attorney and the trial court to make clear insofar as possible the nature of the rulings on the various points of evidence which were initially presented on original trial. We commend the court below for its effort, though we have formerly expressed some misgivings because of the affidavit of the defense counsel contained in this record.
The indictment establishes that the appellant was charged with the first degree murder of one Ollie Kirksey by striking her with a hatchet. The jury found the appellant guilty of murder in the second degree, and fixed punishment at imprisonment in the penitentiary for life. The trial court then entered judgment which set sentence in accordance with this verdict.
The principal dilemma with which this Court is confronted is attempting to pass upon the three assertions of error, which are: (1) Testimony pertaining to the cause of death being given by a coroner; (2) The admission of gruesome photographs of the victim into evidence; and (3) The admission of a statement given the arresting officers on the night of the offense by the appellant, who asserts that the trial court erred in denying his motion to suppress and motion to exclude because of the mental condition of the appellant, the appellant contending that such alleged confession was not the product of a rational intellect and free will, and was thus inadmissible.
The tenor of the State’s evidence was to the effect that on the night of January 29, 1973, police officers were summoned to the home of Ollie Kirksey, 1220 West Fourteenth Street, Anniston, Alabama, to investigate an incident involving the appellant and one Ollie Kirksey. The tenor of the appellant’s evidence was through his sister, Annie Swain, and others, and to the effect that the appellant was mentally incompetent and had been in and out of mental hospitals in Michigan and Alabama for a period of more than twenty years, that they believed the appellant to be insane. Similar testimony was given by the appellant’s sister, Mrs. Gladys Ware. The appellant at trial also presented the testimony of Dr. Samuel J. Crawford of the Calhoun — Cleveland Health Center who testified that he had examined Sider Swanson on May 28, 1973, and determined, in his opinion, the appellant could not choose between right and wrong and was in fact a paranoid schizophrenic, and a very ill person.
The State of Alabama in its case presented the testimony of Mrs. Annie Swain, who testified that she had previously seen Ollie Kirksey, her aunt, alive on January 29, 1973, and viewed her body at the home about 10:15 p. m. that evening, and that she saw no visible life signs. She further testified that the appellant, Sider Swanson, lived with Ollie Kirksey next door. She further testified that the appellant had been in and out of mental hospitals most of his life, but that she knew of no hard feelings or difficulties between the appellant and the deceased.
County Coroner Ralph Phillips testified that he had been serving in this capacity for some eight years as of January 29, 1973, and had examined the bodies of a number of deceased persons, that he had assisted the toxicologist when autopsies were performed. He stated that no autopsy was performed on the body of the deceased, Ollie Kirksey, because it was apparent from examining her head wound that she had been killed by a blow to her head administered by a sharp instrument. He testified, over objection, that such blow was the cause of death.
Several photographs made by Mr. Phillips at the scene were then identified and admitted, over objection, as State’s Exhibits Nos. 1-9.
Annie Swain was then recalled by the State and testified that prior to going next door to the home of the deceased, she had heard a knock at the door, and upon opening it, she saw the appellant, who told her there had been trouble next door and that Ollie Kirksey had tried to kill him. She testified that the appellant stated to her that he had struck Ollie Kirksey in the head with a hatchet as she was going for a butcher knife. She testified that she imme *1168 diately notified the police and told the appellant to go back next door and wait there for their arrival.
Anniston Police Officer Thomas P. Han-lon testified that he went to the home of Ollie Kirksey at 1220 West Fourteenth Street in Anniston about 10:22 on the evening of January 29, 1973. Upon arrival at this address, he saw the appellant, Sider Swanson, standing in the front yard and asked him if he had been involved in a fight inside the house. He stated that they walked to the front porch and he looked inside and saw what appeared to be a body of a black female lying on the floor with no visible life signs. He immediately read a Miranda card warning to the appellant and advised him that he could remain silent, and any statement by him could be used against him. He further told the appellant that if he could not afford an attorney, one would be appointed to represent him. He stated that the appellant replied that he understood his rights and did not want an attorney. Officer Hanlon further testified that neither he nor anyone in his presence made any threat, offered any inducement, hope of reward, or other incentive to obtain a statement, and that the appellant volunteered the comment, “he and his aunt had an argument and that she had tried to kill him, that he hit her in the head with a hatchet.” Officer Hanlon described the appellant as being very calm, showing no emotion, and being very cooperative.
On cross-examination Officer Hanlon did state that the time lapse was very short for the questioning, but that on two occasions the appellant did appear disoriented as to time and place, and that he stopped questioning him.
Anniston Police Detective Gary Carroll testified that he interrogated the appellant at police headquarters about 10:45 p. m. on January 29, 1973. He stated that he read the appellant a Miranda card warning and the appellant advised him that he understood his rights, that he had been previously advised of his rights. Detective Carroll further testified that there was no threat, inducement, intimidation, or hope of reward made or offered in order to obtain a statement from the appellant. He said that he then wrote out a statement, which the appellant signed in his presence, and it was also witnessed by William R. Turner, in which he described a fight with his aunt that evening, and as his aunt was going to get a butcher knife he hit her with a hatchet, then went next door and told his neighbor, Mrs. Annie Swain what had happened.
On cross-examination, Detective Carroll did state that at least twice during his conversation with the appellant, Sider Swanson, that evening, he did appear strange and that his mind wandered. He stated on one occasion the appellant said his aunt had been following him on a bus from Michigan to Anniston.
Following this, the State then presented items of physical evidence, such as the hammer and the hatchet found at the scene.
The appellant made a motion to exclude the State’s evidence, asserting that the State had not made out a prima facie case, had not properly proved the cause of death through a person competent to testify, that gruesome photographs had been admitted into the evidence, and that the appellant did not knowingly, voluntarily, and intelligently waive his right of self incrimination and his right to remain silent. The appellant also asserts that due to his mental condition and past mental history, he could not make an intelligent or voluntary statement.
I
The appellant contends that the allowance of Coroner Ralph Phillips’ testimony as to the cause of death of the deceased was reversible error. This contention is based on the grounds that the witness was not qualified as an expert in that he was not trained in autopsies and had not taken any course on the subject of autopsy, but had been trained primarily in law enforcement.
Coroner Phillips testified that he had been coroner for eight years at the time of his investigation on January 29, 1973, into the death of Ollie Kirksey. He stated that he had the “opportunity to observe *1169 literally hundreds of people who had died from natural and unnatural causes.” Phillips further testified that based upon his investigation he was of the opinion that death resulted from a blow to the head with a sharp instrument.
This Court on appeal will not disturb the trial judges’ findings of expert qualifications vel non unless there is a clear abuse of this discretion. King v. State, 266 Ala. 232, 95 So.2d 816.
Whether a witness can acquire sufficient expert knowledge within a given field of endeavor; not ordinarily ventured into by a layman, depends upon an individual’s training and experience. This subject is fully covered in this Court’s opinion in Cobb v. State, 50 Ala.App. 707, 282 So.2d 327, and authorities therein cited.
We are of the opinion that the trial court properly permitted Coroner Phillips to give his opinion as to the cause of death in the instant case.
II
The nine photographs taken by the investigating officers inside the home, the scene of the homicide, that evening were properly admitted into evidence. Smarr v. State, 260 Ala. 30, 68 So.2d 6; Nichols v. State, 267 Ala. 217, 100 So.2d 750.
The fact that some of the photographs of the deceased showed blood on her did not make them inadmissible. Nichols, supra; Brodka v. State, 53 Ala.App. 125, 298 So.2d 55.
III
With reference to the assertion that the appellant could not have made an intelligent waiver of his rights and give a voluntary and intelligent statement to Officers Hanlon and Carroll on the night of the homicide, January 29, 1973, we are of the opinion that the latest expression of the law on this subject is well stated by Judge Bookout, speaking for this Court in Allred v. State, 55 Ala.App. 74, 313 So.2d 195, cert. denied 294 Ala. 751, 313 So.2d 203, as follows:
“Appellant further contends that the alleged confession was not the product of a rational intellect and a free will thus rendering the statement inadmissible.
“The Supreme Court of Alabama, through Simpson, J., stated in Goldin v. State, 271 Ala. 678, 127 So.2d 375, that:
“ ‘ . . . The fact that an accused is not in full possession of his or her mental faculties when the confession is made does not render it inadmissible, but only affects the weight to be accorded by the jury; or is provable merely to support other evidence that the confession was not voluntary. To render such a confession inadmissible on that ground the mania must have been such that the accused was either an idiot or a lunatic during lunacy. Redwine v. State, 258 Ala. 196, 61 So.2d 724.’
“Also in Elrod v. State, 281 Ala. 331, 202 So.2d 539, the Supreme Court of Alabama, through Merrill, J., stated the proposition as follows:
“ ‘ . . . Accused’s intelligence, character and situation at the time of the confession of the crime charged are important considerations in determining whether the confession was voluntary, but the fact that accused was of tender age or weak intellect will not alone render the confession inadmissible in evidence as involuntary. State v. Ashdown, 5 Utah 2d 59, 296 P.2d 726, affirmed 357 U.S. 426, 78 S.Ct. 1354, 2 L.Ed.2d 1443. Evidence tending to show a defendant’s weak mentality, feeblemindedness, and mental stress does not affect the admissibility of the confessions, but rather is a matter that bears on the weight, credibility and effect to be given the confessions by the jury. State v. Stewart, 238 La. 1036, 117 So.2d 583.

“ ‘We have said that a “person may be partially insane and still be competent to testify or make a confession.” The (sic) involves an inquiry into his appearance, demeanor and the nature of his statements. It is for the court to determine *1170 whether he has or had the requisite intelligence and ability to communicate his responses to questions. Redwine v. State, 258 Ala. 196, 61 So.2d 724 . .
“The Alabama Court of Criminal Appeals, through Harris, J., quoted the above propositions in Barnett v. State, 51 Ala.App. 470, 286 So.2d 876, cert. denied, 291 Ala. 773, 286 So.2d 890.
“This Court is not unaware of the United States Court decision of Blackburn v. State of Alabama, 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242, wherein petitioner’s confession was held inadmissible because the evidence indisputably established the strongest probability that Blackburn was insane and incompetent at the time he allegedly confessed. This coupled with an eight or nine hour interrogation by law officers brought about the conclusion that Blackburn’s confession was involuntary. After a careful examination of the testimony of the instant case, we cannot say that the evidence here indisputably establishes the strongest probability of appellant’s insanity.
“The trial judge gave a lengthy and comprehensive charge to the jury on the question of sanity. At the end or the oral charge, defense counsel announced they were satisfied with the court’s charge.”
We are not unmindful that the appellant had been sent to Bryce Hospital and there originally determined to be suffering from a mental disorder in 1973. See original record, pages 15-17; also pages 21-22. However, appellant was subsequently determined to be sane and competent in July, 1975, and was returned to the Calhoun County Jail for trial. We believe that all of this evidence bears on the weight and credibility of the statements here admitted rather than as to their admissibility. (Authorities herein cited.)
In Cunningham v. State, 47 Ala.App. 730, 261 So.2d 69, we find this statement:
“ . . The rule governing expert medical testimony on the issue of insanity has been stated by the Supreme Court of Alabama in George v. State, 240 Ala. 632, 200 So. 602, as follows:
“ ‘The opinion of expert witnesses as to insanity are not conclusive upon the jury; they are to be weighed like other evidence, such evidence being intended to aid the jury, and its value depending largely upon the intelligence, experience, honesty and impartiality of the witness. The jury may reject it all, though it is without conflict. McAllister v. State, 17 Ala. 434, 52 Am.Dec. 180; Parrish v. State, 139 Ala. 16, 36 So. 1012.’ Hockenberry v. State, 246 Ala. 369, 20 So.2d 533. “Under the above, we are of the opinion that the trial court correctly submitted this issue to the jury.”
Despite our original misgivings as to the status of the transcript here tendered because a .verbatim court reporter’s copy is not available, we nevertheless conclude that the record here presented is free of error, and is due to be affirmed.
The judgment is therefore
AFFIRMED.
All the Judges concur.