56 So.2d 348

PARKER v. CITY OF BIRMINGHAM.

6 Div. 981.

Court of Appeals of Alabama.

Aug. 2, 1951.

Rehearing Denied Oct. 2, 1951.

Beddow & Jones, Roderick Beddow and G. Ernest Jones, Jr., Birmingham, for appellant.

J. Reese Johnston, Jr., and J. M. Breckenridge, Birmingham, for appellee.

PRICE, Judge.

This case was tried de novo in the circuit court on appeal from a judgment of conviction in the Recorder's Court of the City of Birmingham. Defendant was convicted under count two of the complaint charging him with an assault and battery upon the person of Mrs. F. H. Twining, contrary to and in violation of Section 825 of The General City Code of Birmingham of 1944. Defendant was sentenced to pay a fine of $100 and serve 100 days hard labor for the City of Birmingham, and to pay the costs of court, or to serve a period of time in lieu thereof.

Appellant assigns as error No. 1, the overruling of his motion for a mistrial, on the ground the court had stated to the jury at the opening of the trial: "Gentlemen of this panel, may I say to you that the case before you comes to you by reason of a statute which says that any person convicted in the Recorder's Court of the City of Birmingham has a right to appeal that case to the Circuit Court to be tried de novo."

This question was decided adversely to appellant's contention in the cases of Fiorella v. City of Birmingham, 35 Ala.App.

236

384, 48 So.2d 761, certiorari denied 254 Ala. 515, 48 So.2d 768, and Smiley v. State, ante, p. 64, 52 So.2d 710, certiorari denied Ala.Sup., 52 So.2d 710.

Assignments 2, 3 and 4 are predicated on the action of the court in making certain remarks in the presence of the jury during the redirect examination of Mrs. Twining, the party assaulted, said statements being as follows:

"Let's not make side remarks. There is nothing wrong with the lady's conduct..

"The witness has such an atmosphere that she is probably confused.

"No; that is part of the argument, and that is improper."

On each occasion the defendant had objected to the witness injecting voluntary statements into her answers, and a colloquy had ensued between the court, defendant's counsel and the City Attorney.

■ The Supreme Court, in the case of Phillips v. Beene, 16 Ala. 720, held: "It cannot be seriously contended that every expression of opinion by the court, during the progress of the trial, if erroneous, shall furnish ground for reversal. But such opinion must, in some manner, influence the result of the cause, or be supposed to do so, by being given in charge to the jury, or by a refusal to charge, or by being connected with the exclusion or admission of evidence."

■ We cannot conclude that prejudice to the substantial rights of the defendant resulted from these remarks of the court. Supreme Court Rule 45, Code 1940, Title 7 Appendix; Woodard v. State, 253 Ala. 259, 44 So.2d 241; Selvage v. State, 29 Ala.App. 371, 196 So. 163.

In assignment of error 5, defendant insists the City was attempting to bolster by self corroboration the testimony of Mrs. Ross Wunderlich, and that the court committed reversible error in allowing the City, after objection and exception to ask Mrs. Wunderlich this question: "Did he discuss with you your testimony and ask you to show him that paper?" This question related to a conversation between Mrs. Wunderlich and one of the attorneys for defendant.

■ And in assignments 7, 8 and 9, insistence is made that the court committed error in overruling defendant's objections to the following questions to the witness Doris Creed:

"Did she carry—What did she do? What did she do? He won't let you—"

"Q. Did she make any statement to you about a license number?"

"What did she say in that regard.?"

To this question the defendant answered: "A. So when she gave me this number, as I said, the police were there. I went back, and they were inside the other building—" This answer which was not responsive to the question, was not prejudicial to defendant.

"I will ask you to look at this paper marked City's exhibit 'D' and tell the jury whether or not that is the number and that is the paper that Mrs. Wunderlich gave you on that occasion."

Defendant insists the questions propounded to Miss Creed sought to elicit evidence relating to a communication by Mrs. Wunderlich to Miss Creed which was not a part of the res gestae and was hearsay and the purpose of such evidence was to bolster and corroborate the testimony of Mrs. Wunderlich.

The paper on which Mrs. Wunderlich wrote the license number was already in evidence and Miss Creed testified the paper had been in her possession until shortly before the trial when she returned it to Mrs. Wunderlich.

We quote from appellant's argument in brief on this question: "Witness, Mrs. Ross Wunderlich, had testified that she saw the automobile in which the parties arrived on the occasion when the ladder was alleged to have been knocked from under the negro and on the occasion when Mrs. Twining was alleged to have been assaulted, this being the afternoon of October 10, 1949. She testified that she took the license number from the automobile and wrote it down on a piece of paper and that she turned the paper over to Miss Doris Creed. The license tag number in question was shown by the evidence to have been transferred to William Homer Park-

er on the 7th day of September, 1949, and the automobile bearing this license tag number was shown to have been sold by Drennen Motor Company to the defendant on the 3rd day of September, 1949."

Mrs. Twining testified defendant was the man who assaulted her.

■ In view of the strong tendency of the evidence to establish appellant's guilt of the offense charged, we are not convinced that the action of the court in overruling the objections to the questions set out in assignments 5, 7, 8 and 9 and the admission of the corroborating evidence, probably injuriously affected the substantial rights of the defendant so as to entitle him to a reversal of this cause. Supreme Court Rule 45.

■ No argument appears in support of assignment of error 6 and said assignment is presumed to have been waived. Taylor v. City of Birmingham, 253 Ala. 369, 45 So.2d 53; Brooks v. City of Birmingham, 31 Ala.App. 579, 20 So.2d 115; certiorari denied 246 Ala. 232, 20 So.2d 118, and authorities cited.

The judgment appealed from is ordered affirmed.

Affirmed.

## On Rehearing.

Counsel for appellant complains earnestly in his application for rehearing that we were not justified in applying Rule 45 to the effect of certain remarks by the court, the basis of assignments 2, 3 and 4. After again giving these statements careful consideration en banc we are firmly convinced that we should adhere to our former conclusion in this respect.

However, in deference to counsel's insistence, and in order to insure a full and complete review of the question by the Supreme Court we set out herein that part of the record involved in counsel's contention:

"(By Mr. Huey) Q. Was there other people standing in the room? A. I noticed no one else. I was met by the detectives. I am sure there was other people in the room, but I wasn't paying any attention to them. I was asked by the detectives to come; I had been down to Mr. Perry's office that morning, upon request, and when I got back the phone call was there—

"Mr. Beddow: Judge, we don't care about all of that.

"The Court: Let her answer.

"Mr. Beddow: I don't want to—

"The Court: I think it is proper.

"Mr. Beddow: He didn't ask her about that, and we want to object to her making voluntary statements.

"The Court: Leave it in.

"Mr. Beddow: And we except to the ruling of the court.

"Q. You said you talked to Mr. Perry, who is Mr. Perry?

"Mr. Beddow: We object to that. It calls for irrelevant, incompetent, illegal and immaterial testimony; it calls for a different and separate matter other than brought out on cross examination—

"Mr. Huey: It is about this matter—

"Mr. Beddow:—And on the further ground that no question has been asked her with regard to any activity otherwise than the City Hall where she says she saw this man, and we haven't endeavored to question her about another single act she did that day, except that; and it calls for hearsay, and calls for irrelevant, incompetent, illegal, and immaterial testimony.

"The Court: The court has ruled.

"Mr. Beddow: We except.

"Mr. Huey: Would you read it?

"A. I don't know what it is, would you repeat it?

"Mr. Huey: Would you read it?

"Mr. Beddow: This lady seems to be—

"Mr. Huey: We object to that statement.

"The Court: Let's not make side remarks. There is nothing wrong with the lady's conduct.

"Mr. Beddow: We except to the statement of the court.

"The Court: And you gentlemen leave off the argument until we finish the evidence.

"Mr. Beddow: We except to the statement by the court that there is nothing

wrong with the witness' remarks; and we except to the portion of the witness' conduct; the witness has been smiling and smirking, and looking around the court, and looking at counsel, and looking around in the court at individuals in the court room.

\* \* \* \* \* \*

"Q. I will withdraw that question. Were you taken to the City Jail and did you look at a line-up of men there with respect to identification of any of those men?

"Mr. Beddow: We object to that. It calls for incompetent, irrelevant, immaterial and illegal testimony; it calls for hearsay, and acts not done in the presence of this defendant; it calls for acts not known in the presence of this defendant.

"The Court: Let her answer it.

"Mr. Beddow: We except.

"A. Yes, sir; I did.

"Q. And then later, as I understand your testimony, you were called to the City Hall? A. I identified on the occasion you just described.

"Mr. Beddow: We object to that. This man is entitled to a fair trial, and this woman is volunteering information, and I have asked the court three times to ask this witness to quit making voluntary statements.

"The Court: The witness has such an atmosphere that she is probably confused.

"Mr. Beddow: We except to that statement made by the court in the presence of the jury, and of the statement of the court as ex mero motu.

\* \* \* \* \* \*

"Mr. Beddow: Judge, I want to ask the court to permit me to interpose an objection and assign grounds. That is all I am asking you to do; that has always been done, it will always be done; and I am asking you to put my objection in; and the witness shows that she is much interested.

"The Court: No; that is part of the argument, and that is improper.

"Mr. Beddow: We object to that question on the grounds it calls for incompetent,

irrelevant, illegal and immaterial testimony; it has nothing to do with this case in the world; and she says she walked in and the defendant was sitting there and looked at the defendant and saw him."

Appellant also complains of the court's finding that "the evidence has such a strong tendency to establish appellant's guilt of the offense charged." In fairness to defendant we here state the tendencies of the evidence.

Mrs. Twining testified she was working as Secretary-treasurer for the Ideal Heating & Refrigeration Company in Birmingham. About two o'clock in the afternoon of October 10, 1949, she was painting the inside ledge around the display window of the building. A Negro boy was painting the trim on the outside of the show window. A man lunged across the sidewalk and knocked the stepladder from under the Negro boy. Mrs. Twining rushed outside and asked "what do you think you are doing." Without saying a word the man picked up the ladder and threw it at Mrs. Twining, hitting her on the right arm. This witness identified defendant as the man who hit her with the ladder.

The other testimony for the State is set out in the original opinion, quoted from the defendant's brief.

The defendant offered proof of his good character and evidence tending to establish an alibi.

Application overruled.