100 So.2d 750

**Lucile M. NICHOLS**

v.

**The STATE of Alabama.**

**4 Div. 929.**

Supreme Court of Alabama.

Jan. 23, 1958.

Rehearing Denied March 6, 1958.

Alto V. Lee, III, and Dwight L. McInish, Dothan, and Chas. O. Stokes, Ozark, for appellant.

John Patterson, Atty. Gen., and Wm. C. Younger, Asst. Atty. Gen., for the State.

MERRILL, Justice.

Lucile M. Nichols was indicted for murder in the first degree, being charged with the murder of her husband, Ralph W. Nichols; and upon trial, she was convicted of murder in the second degree and punishment was fixed by the trial jury at imprisonment in the penitentiary for a period of thirty years. The appellant's motion for a new trial was denied. Hereafter, the appellant, Lucile M. Nichols, will be referred to as the defendant.

The evidence shows that on the afternoon of 31st of December, 1956, the defendant shot the deceased in their bedroom in Dothan, Alabama. Several city policemen, the sheriff and certain deputies went to the Nichols' home. When the officers arrived at the home of the defendant, they found the defendant, her daughter Rhoda, and Benjamin Chalker, who has since married Rhoda. The body of the deceased was in the bedroom. The defendant was crying and wringing her hands. One officer testified that defendant stated: "Lord have mercy, I didn't mean to kill him * * * I love him." This same officer testified that defendant stated also: "If I couldn't have him, no one else could."

At the time of the shooting only the deceased, the defendant, daughter Rhoda and Benjamin Chalker were in the house. Chalker testified that on the afternoon of the 31st of December, 1956, at about four or four-thirty, he saw the deceased, Ralph W. Nichols; that they (he and the deceased) were talking in the kitchen of the Nichols' home; that the telephone rang and Nichols answered it; that he heard him say: "All right, all right, you get your own lawyer," slammed the phone down, appeared mad and left in his car; that he returned in about five minutes with Mrs. Nichols; that he and Rhoda went into the den; that he heard deceased and Mrs. Nichols arguing in their bedroom and heard the word "divorce;" that it wasn't long before he heard some shots.

The defendant interposed pleas of not guilty, not guilty by reason of self-defense, and not guilty by reason of insanity.

The defendant's daughter, Rhoda, gave the only evidence in support of the plea of self-defense. Rhoda testified that after her mother and father returned home on the afternoon of the 31st of December, witness went into the den of their home; that from her seat in the den, she could see the bedroom where her mother and father were; that the door to the bedroom was partially open and that she saw her father rush at her mother; that she turned her head to Benjamin, who was sitting on the sofa, and then heard shots. There is other evidence in the record which shows that Rhoda told the investigating officers, her grandfather and grandmother that the door to the bedroom was closed and that she did not see anything. Further, that she and Benjamin were sitting on the settee or sofa at the time of the shooting. State's exhibit 7 shows that the bedroom could not be seen from the said sofa or settee. The record reveals that Benjamin Chalker made similar remarks about the door being closed and not being able to see the bedroom. It is undisputed that in Dothan "it was common gossip all over town about her husband (Nichols) carrying on" with a woman who lived in Marianna, Florida. On Saturday before the killing occurred on Monday, the defendant was informed that her husband was in the apartment of one Joy Draughon in Marianna. The defendant, her daughter Rhoda, and Chalker drove to Marianna in Chalker's automobile and that afternoon in the company of a Marianna policeman,

they found Nichols asleep on a couch in the Draughon woman's apartment. He was intoxicated and had his shoes off. He left the apartment with them and after the departure of the policeman, rode around with them in Chalker's car. During that ride, he agreed that he would not contest a divorce in favor of the defendant. He was put out of the car in front of the Draughon woman's apartment and the defendant, Rhoda and Chalker drove back to Dothan. The defendant went to see her pastor, then drove to Enterprise to talk with Nichols' parents, came back to Dothan and borrowed the pistol with which she shot deceased four times on Monday afternoon. The evidence affords the inference—although the defendant contends to the contrary—that deceased was first shot in the back, and then shot in the face, neck and chest while falling or while on the floor.

The defendant insists that many errors are contained in the record. We proceed to examine her contentions and number them for convenience.

## I. Remarks of the Trial Court

■ The State planned to use the sheriff as a witness because the sheriff was one of the investigating officers who went to the scene soon after the shooting happened. The solicitor asked the court to excuse the sheriff from the rule. The attorney for the defendant objected on the ground that it would be prejudicial to the rights of the defendant. The court then made the following statement:

"I don't think I agree with the attorney for the defendant. I don't think the Sheriff of our County would let anything influence him in the giving of his testimony except his conscience."

The court then excused the sheriff from the rule and defendant excepted to his ruling. We have held that where witnesses are placed under the rule, it is discretionary with the presiding judge to

permit exceptions to its enforcement. Webb v. State, 100 Ala. 47, 14 So. 865; McDowell v. State, 238 Ala. 101, 189 So. 183; Smarr v. State, 260 Ala. 30, 68 So.2d 6. The defendant contends that the court's remark concerning the sheriff was a comment on his credibility and, therefore, reversible. The attorney for the defendant did not except to the court's statement nor did he move the court to instruct the jury to disregard the statement. As we read the record, counsel for defendant agreed with the court's remark about the sheriff. It was on his motion for a new trial that defendant first asserted that the trial court erred in making the statement. We think the remarks of a trial judge come within the same rules as improper argument or remarks of counsel. The general rule is that improper argument of counsel (or improper remarks from the court) is not a ground for a new trial or subject of review on appeal unless there is due objection by counsel or a motion to exclude, a ruling thereon by the court and an exception thereto, or a refusal of the court to make a ruling. Washington v. State, 259 Ala. 104, 65 So.2d 704; Anderson v. State, 209 Ala. 36, 95 So. 171.

An exception to this general rule, requiring appropriate objection or motion invoking corrective instruction or action by the trial court, is where the remark or argument of counsel (or court) is so grossly improper and highly prejudicial to the opposing party as that neither retraction nor rebuke by the trial court would have destroyed its sinister influence. Anderson v. State, 209 Ala. 36, 95 So. 171.

In Phillips v. Beene, 16 Ala. 720, this court held:

"'It cannot be seriously contended that every expression of opinion by the court, during the progress of the trial, if erroneous, shall furnish ground for reversal. But such opinion must, in some manner, influence the result of the cause, or be supposed to do so, by being given in charge to the jury, or

by a refusal to charge, or by being connected with the exclusion or admission of evidence.' "

Parker v. City of Birmingham, 36 Ala. App. 234, 56 So.2d 348. See also, Fiorella v. City of Birmingham, 35 Ala.App. 384, 48 So.2d 761, certiorari denied 254 Ala. 515, 48 So.2d 768, where it was held that the court's statement concerning a witness did not tend to bolster the testimony of that witness.

■ The remark of the trial court relative to the sheriff should more properly have been left unsaid, but we cannot say that it was highly prejudicial to the rights of the defendant. As already pointed out, there was no objection to it; also the testimony of the sheriff was merely cumulative. If the testimony of the sheriff be obliterated, the evidence remains the same, and is established by several other witnesses. It should also be borne in mind that the sheriff was not on the stand or beginning to testify at the time the remark was made. No witness had been examined and the record does not affirmatively show that the remark was made in the hearing of the jury. Phillips v. Beene, supra. We cannot say it constituted reversible error.

■ The next remark of the trial court argued as being error was when he said, "I think the whole thing is silly." The State introduced the undertaker Hall who removed the deceased's body to the funeral home. He testified that with the exception of nine ounces of embalming fluid being injected into his veins, there was no change in the body of the deceased from the time it was removed from the scene of the shooting until the autopsy was performed. The solicitor asked the undertaker the following question:

"From your experience, over ten years experience and observation and working around dead human bodies, is it your opinion that wounds, their condition, their range and all, are not changed by the injection of embalming

fluid and drawing of the blood from the dead bodies?"

Over objection of the defendant, the undertaker was allowed to answer in the negative. On cross-examination, counsel for defendant brought out that the undertaker was not qualified to answer the question. The court then made the following remark:

"I think the whole thing is silly. You have got witnesses to testify where the bullet entered and where it came out and putting an injection or a little fluid in the veins or arteries certainly wouldn't change the direction— let me take that back—I sustain the objection and exclude from the jury the testimony given by the witness to the effect that it was his opinion that the injection of the particular fluid into the—that is in substance his testimony—into the blood vessels of the body would not change the condition of the wounds."

We do not think the court committed reversible error here. A fair reading of the record imparts that the trial judge was directing his remarks to the solicitor when he made his statement about the whole thing being "silly." The ruling of the trial court was in favor of the defendant because he changed his ruling and sustained the defendant's objection and excluded the testimony.

■ While Dr. Windham was being questioned on redirect examination by counsel for the defendant, he was asked the following question:

"I will ask you, Doctor, if in that conversation, you stated to me this, or in substance this, that she was as crazy as a bedbug or that she was as crazy as a loon."

The solicitor did not object. The trial judge, however, then asked: "Aren't you going to object to that?" In response to this inquiry, the special prosecutor objected and the court sustained the objec-

tion. Counsel for the defendant excepted to the *ruling* of the court and not to the trial court's action of *ex mero motu* raising of the objection. There was no error in the court's action of sustaining the objection to the foregoing question. Neither was there error in the court's remark. 88 C.J.S. Trial § 156, states:

"Although it has been held that ordinarily it is the better and safer practice for the court to defer action on the admission or rejection of evidence until a proper objection is made by the party interested in having the evidence excluded, nevertheless the court is not bound to hear and determine the cause on improper evidence but, in the exercise of its right to control and regulate the conduct of the trial, may of its own motion exclude or strike evidence which is wholly incompetent or inadmissible for any purpose, even though no objection is interposed to such evidence."

From the record, it appears that Dr. Windham was a witness for the defendant; that he had testified on cross-examination by the State that defendant did not have a mental disease; that this question was asked on redirect examination and appeared to be an attempt by the defense counsel to impeach his own witness and, therefore, was objectionable. The cases of Liner v. State, 124 Ala. 1, 27 So. 438; Jarvis v. State, 138 Ala. 17, 34 So. 1025, and Rogers v. State, 36 Ala. App. 602, 61 So.2d 249, hold that the court may, ex mero motu, exclude improper evidence at any stage of the trial.

This question would not have arisen had the court been informed of an agreement made between the prosecution and the defense. Dr. Windham had been subpoenaed by both sides. He was called first by the defendant, but the attorneys had agreed between themselves that each could cross-examine the doctor at that time because the State was going to bring him back as a rebuttal witness, and Dr. Windham had another engagement that he desired to fill. The court, not being informed of the agreement, naturally could not understand why the defendant was trying to impeach his own witness and wondered why the solicitor did not object. When counsel explained the agreement to the court, the witness was permitted to answer the question. In this, there was no reversible error.

The remarks of the trial judge, considered separately and collectively, did not injuriously affect the rights of the defendant. See Woodard v. State, 253 Ala. 259, 44 So.2d 241, and cases therein cited.

## II. Questions Propounded by the Solicitor

■ The defendant complains that many questions propounded by the solicitor on cross-examination of the defendant's witnesses were error. The record reveals that no objection was interposed to most of the questions of which she complains. Objections to evidence in a criminal prosecution cannot be raised for the first time on appeal, and where no objection is raised in the lower court, there is nothing to review here. Pugh v. State, 247 Ala. 535, 25 So.2d 417.

■ On cross-examination, Rhoda Nichols was asked by the solicitor: "And he told you that afternoon (of the shooting) that he was going to give you a new automobile for a wedding present, didn't he?" A general objection was interposed. After an inquiry by the trial court as to the solicitor's theory of admissibility, the solicitor replied that it was to show the state of mind of the deceased just prior to the shooting. General objections to evidence are without weight on appeal if the evidence is admissible for any purpose. See Ala. Dig., Appeal and Error, ☞231(3). Circuit Court Rule 33, Code 1940, Tit. 7 appendix. We fail to see how any of these questions on cross-examination adversely affected the defendant. The scope and extent of cross-examination is largely within the discretion of the trial court. Ala. Dig., Witnesses, ☞267, 268(1). We·

do not think that discretion was abused in any of the instances where objections were interposed.

### III. Experiment of Test Firing the Pistol

■ Defendant claims that error occurred when the State's witness, Mr. Sowell, was allowed to testify that he had test fired the pistol which fired the fatal shot, to determine how far the pistol would produce powder burns or stains. The defendant apparently contends that it was not shown by the State that the conditions of the test firing experiment were substantially the same as at the time of the actual event. The rule of admissibility of evidence of an experiment made out of court is thus stated in Louisville & Nashville R. Co. v. Sullivan, 244 Ala. 485, 13 So.2d 877, and Neelley v. State, 261 Ala. 290, 74 So.2d 436, 439:

> "Of course, there must be similarity of conditions to give an experiment sufficient probative value to warrant its admission, and if the conditions were dissimilar in an essential particular, the evidence should be rejected. But the authorities are to the effect that it is not necessary that the conditions should be exactly identical. A reasonable or substantial similarity suffices, and the lack of exact identity affects only the weight and not the competency of the evidence. It is for the court to determine whether the conditions are sufficiently similar to warrant admission of this proof, and must be left to the sound discretion of the trial judge."

We are unwilling to say that the rule was not complied with in this instance. The pistol used in the test was the same pistol used in the fatal shooting. The ammunition fired in the tests was the same type of ammunition that was fired in the pistol at the time of the fatal shooting. The witness was an expert.

### IV. Photographs

■ During the trial, several photographs of the deceased were introduced into evidence by the State. Defendant contends that said pictures were calculated to prejudice the defendant in the eyes of the jury and "might have influenced the jury in rendering the verdict against this appellant." In this, we cannot agree. What was said in McKee v. State, 253 Ala. 235, 44 So.2d 781, and later, in Hines v. State, 260 Ala. 668, 72 So.2d 296, 299, is applicable here:

> "'Courts and juries cannot be too squeamish about looking at unpleasant things, objects or circumstances in proceedings to enforce the law and especially if truth is on trial. The mere fact that an item of evidence is gruesome or revolting, if it sheds light on, strengthens or gives character to other evidence sustaining the issues in the case, should not exclude it.'"

The pictures depicted death, but were not particularly offensive. The fact that the pictures showed the deceased with some blood on him did not make them inadmissible. There is nothing inconsistent with our holding and that of Rollings v. State, 160 Ala. 82, 49 So. 329, cited by the defendant. The test there was that "they must have some tendency to prove or disprove some disputed or material issue, to illustrate or elucidate some other relevant fact or evidence, to corroborate or disprove some other evidence offered or to be offered. They must have some tendency to shed some light upon some material inquiry." The photographs in question met the tests of both the cited quotations.

### V. Charges

The substance of charge 15 was covered in given charges 13, 14, and 20, and the oral charge. Moreover, the charge is abstract in that the only threat in the evidence in the instant case was made some twelve or thirteen years prior to the date of the killing.

Charge 16 also was substantially covered by given charges 13, 14 and 20, and the oral charge.

The principle sought to be stated in defendant's refused charge 17 was fully covered in the oral charge and in written charges 13, 14, 18, A and B given at the request of the defendant. Tit. 7, § 273, Code 1940.

■ Charge 21 was properly refused because it begins "The defendant charges the jury." Moreover, the evidence in the instant case presented a jury question as to whether the defendant provoked the difficulty, and in that state of the evidence, the charge was refused without error. Favors v. State, 32 Ala.App. 139, 22 So. 2d 914 (No. 23); Abercrombie v. State, 33 Ala.App. 581, 46 So.2d 111 (No. 12).

Refused charge 5 was covered in the oral charge and by given written charges 6 and 8.

Defendant urges error in the giving of charge 2 for the State that "emotional insanity is not recognized as a defense to crime in Alabama." This is a correct statement of the law. Grant v. State, 250 Ala. 164, 33 So.2d 466. It could have been refused without error as being abstract. It was fully covered in the oral charge. The giving of the charge was not error. Supreme Court Rule 45, Code 1940, Tit. 7 Appendix.

VI. Physical Condition of Defendant

The defendant contends that the judgment should be reversed because her physical condition prevented her from testifying in her own defense.

The record shows that after defendant took the stand and answered four preliminary questions, her attorney asked for a recess, which was granted. After the recess, and after the solicitor asked for an opportunity to cross-examine the defendant, counsel for the defendant requested the court's permission to withdraw the wit-

ness from the stand. The court and counsel retired from the courtroom. Upon returning to the courtroom, the solicitor waived cross-examination of the defendant and defendant was allowed to withdraw as a witness.

■ No mention is made in the record of the defendant's state of health until after all the evidence had been presented and the case argued to the jury. It was on a motion for a new trial when counsel for the defendant first asserts this as error. He introduced an affidavit of Dr. T. B. Woods, Jr., who stated in substance that he was called to attend Mrs. Nichols at about 5:30 P.M., April 18, 1957; that she was mentally exhausted and in a state of hysteria; that he was asked by the trial judge whether Mrs. Nichols could sit in the courtroom another forty-five to sixty minutes; that he replied that Mrs. Nichols might sit for a short time, but not for long. At this point, the trial was recessed by the judge until the following morning. It is important to note that when Dr. Woods was first called, all evidence had been presented in the case and the arguments to the jury concluded. Dr. Woods was summoned again the next morning at 10:00 o'clock (April 19). He again administered medication to defendant. At this time, the jury was in the jury room considering its verdict. Dr. E. G. Burson was summoned by the trial judge at 2:00 o'clock the afternoon of the 19th. At this time, the jury was ready to render their verdict. At no time did the defendant make any effort to secure a continuance of the trial. Even where a continuance has been requested, it has been held:

"The granting of a continuance is purely within the sound discretion of the trial court and his action in the premises will not be disturbed unless gross abuse of discretion appears. Maund v. State, 254 Ala. 452, 48 So.2d 553; Smith v. State, 35 Ala.App. 210, 45 So.2d 172. In Bryant v. State, 185 Ala. 8, 64 So. 333, the Supreme Court held that illness is not a cause for a

continuance if an accused can be put to trial without interference with health."

Redwine v. State, 36 Ala.App. 560, 61 So. 2d 715, certiorari denied 258 Ala. 196, 61 So.2d 724.

There was no attempted showing made in the instant case that defendant's health was or might be put in danger. The case of Smarr v. State, 260 Ala. 30, 68 So.2d 6, 13, is similar to the situation here. There, we said:

"The trial of this case had to be interrupted on more than one occasion due to the fact that the defendant was seemingly unable to proceed with the trial. On each of such occasions the jury was removed from the courtroom. While testimony was taken in the absence of the jury relative to the physical and mental capacity of the defendant to proceed with the trial, the defendant was present at all times. On the first of such occasions Dr. Smith was called in by the court to examine the defendant and it was his opinion that she was suffering from hysteria and would be unable to proceed for a period of thirty minutes to an hour. This occurrence took place late in the afternoon and court was recessed until the following morning, at which time the court determined that the defendant was able to proceed.

"Counsel for defendant then requested that the trial be suspended and defendant be examined by experts on mental diseases. The trial court refused to suspend the trial indefinitely for that purpose. The question as to whether or not the defendant was able to proceed with the trial was one which we think was addressed to the discretion of the trial court, who was present and familiar with the prevailing circumstances. It was presented with the question of whether defendant was feigning illness or whether she was actually incapacitated. As we read the record, the trial court was amply justi-

fied in continuing with the trial of the cause and its action in not suspending the trial is not revisable on appeal. Rohn v. State, 186 Ala. 5, 65 So. 42; Whitfield v. State, 236 Ala. 312, 182 So. 42. See Campbell v. State, 257 Ala. 322, 58 So.2d 623."

It is noted in the Smarr case that the defendant raised the point of her illness *during the trial*. In the trial of the instant case, the defendant did not call on the trial court but, instead, it appears that it was the trial judge who first requested the services of a doctor. The trial court was justified in refusing the motion for the new trial on the ground that the defendant did not receive a fair trial on account of her physical and mental condition.

## VII. Defense of Insanity

 Defendant's argument in brief with regard to her mental and physical condition is enmeshed with her plea of insanity, but we comment on this aspect separately.

There was no effort made prior to trial to institute inquisition proceedings as provided for in Tit. 15, § 426, Code 1940.

In Smarr v. State, supra, we said:

"As excuse for the crime, the burden was on the defendant to clearly prove to the reasonable satisfaction of the jury that she was so afflicted by disease of the brain when the offense was committed as to render her so insane that she did not know right from wrong with respect to the particular offense charged, or by reason of such mental disease she could not resist doing the wrong; and the crime must have been the product solely of such diseased mental condition. Lakey v. State, 258 Ala. 116, 61 So.2d 117, and cases cited; Parsons v. State, 81 Ala. 577, 2 So. 854."

The preponderance of the evidence indicated that defendant was of sound mind. Several witnesses for the defendant testi-

fied that defendant's conduct was at times strange or unusual and, in their opinion, the defendant was of unsound mind. In addition to witnesses, the State showed without objection that the defendant applied for letters testamentary as executrix of the last will and testament of the deceased on January 10, 1957, ten days after the killing, and executed a contract selling Nichols Trailer and Equipment Company for $100,-000 on March 12, 1957.

The issue of insanity was for the determination of the jury. The jury determined adversely to the defendant. From the evidence presented, we cannot say the verdict was not well founded.

█ It is further insisted by the defendant that the trial court erred in allowing Dr. S. W. Windham, a physician and general practitioner, to answer the following question which was propounded by the solicitor:

"Q. I will ask you, if in your opinion as a layman and also as a general practitioner, was she ever, at any time that you saw her, suffering from a disease of the mind?"

The following colloquy then took place:

"Mr. Lee: We object, incompetent, irrelevant and immaterial. Goes beyond the issues of his qualifications that he has testified to.

"The Court: Not altogether as a layman but governed by the rules applicable to the opinion of a layman with reference to the mental qualifications of a person, I will let the doctor answer that question. Overrule the objection.

"Mr. Lee: Save the exception.

"A. I saw Lucile on several occasions when she was mentally disturbed, semihysterical and certainly acting abnormally to a given stimulant, but it was never my opinion that she had an organic brain disease, resulting in one of the organic psychoses.

"Q. In your opinion, as a layman and a general practitioner, was the trouble that you observed at all times, when you saw her and did observe her, merely emotional troubles or upset, as contra-distinguished from any mental illness?

"A. That was my opinion at the time."

The case of Smith v. State, 263 Ala. 1, 82 So.2d 296, 297, sets out the law applicable to when a physician may testify to a patient's sanity either as an expert or as a non-expert, as follows:

"It seems to be well-established in this jurisdiction that, as a general proposition, a physician who is qualified and licensed under Alabama law to engage in the general practice of medicine is qualified as an expert to formulate an opinion as to the sanity or insanity of a person, although such physician is not a specialist in mental diseases. (Citing cases.) However, the principle is recognized in some of the decisions that a physician cannot express his opinion as an *expert* when such opinion is based on his examination or observation of a person, unless such examination or observation was with reference to the person's mental condition. (Citing cases.) This is not to say that a physician is incompetent to express an opinion as a *non*-expert when the opinion is based on his examination or observation of a person without reference to his mental condition. Of course, when so testifying, the rules applicable to non-experts apply."

In George v. State, 240 Ala. 632, 200 So. 602, 605, it is said:

"In this State on the question of insanity vel non, witnesses, whether expert or non-expert, may express their opinion as to the sanity or insanity of defendant on trial for crime. (Citing cases.)

* * * * * *

"A non-expert witness * * * must base his opinion solely upon his own personal knowledge, observation, acquaintance, experience, etc., with the individual inquired of. (Citing cases.)"

We are confronted with testimony that Dr. Windham gave as a general practitioner and as a layman, not as an expert. It was admissible under the rule of Smith v. State, supra. We observe in passing that Dr. Windham had been treating defendant for eight years, some of the time for similar mental disturbances; he advised her to see a psychiatrist some three months before the killing; he was called to treat her on Saturday night before the fatal occurrence on Monday, and found her to be mentally disturbed; and he treated her again immediately after the shooting. Thus, he had been treating her for emotional and mental disturbances and could have qualified as an expert under the rule, but that is not necessary for our decision on this particular question. There was no error in permitting the doctor to express his opinion as a layman and a general practitioner.

### VIII. Motion for New Trial

One of the main insistences of defendant on her motion for a new trial was on the theory of newly discovered evidence. This evidence was in the form of an affidavit of one G. E. Brantley, which was made on May 9, 1957, and filed on May 16, 1957. In his affidavit, Brantley stated in effect that the deceased had offered to pay affiant $10,000 to kill Mrs. Nichols. The alleged offer was stated to have been made in Graceville, Florida, one week before Christmas 1956, in a place called Toole's Cafe. A waitress of Toole's Cafe was alleged to have participated in the conversation.

In attacking the affidavit, the State put on Mr. and Mrs. William Toole who owned and operated Toole's place in Graceville, Florida. Mr. Toole testified that he had known G. E. Brantley for four or five years; that Brantley did not come to

Toole's place during the entire month of December, 1956; that Brantley came into his place on 16th of May, 1957, and talked to his wife in the kitchen. Mrs. Toole testified that Brantley talked to her in the kitchen and offered her $5,000 to get on the stand and swear that the deceased offered Brantley $5,000 to kill deceased's wife; that Brantley did not come to her place with Ralph Nichols during December of 1956. She also testified that there was no waitress working at Toole's place during December of 1956.

On the credibility of the affiant, G. E. Brantley, the State introduced fifteen witnesses who had known Brantley for long periods of time. They testified that Brantley had a bad general reputation, and had a bad reputation for truth and veracity and that they would not believe him on oath.

▇▇▇▇ In order for a new trial to be granted on newly discovered evidence, the movant must show that the proffered evidence could not have been discovered before the trial by use of due diligence, that it was material and competent, not merely cumulative, and will probably change the result. Washington v. State, 259 Ala. 104, 65 So.2d 704; O'Pryor v. State, 237 Ala. 13, 185 So. 374; Thomas v. State, 231 Ala. 606, 165 So. 833. Such a showing was not made here. Assuming, arguendo, that the evidence might have been admissible, it is beyond the province of probability that it would have changed the result in view of the preponderance of evidence that Brantley was not to be believed.

▇▇▇▇ The granting of a motion for a new trial was addressed to the sound discretion of the trial court and will not be revised on appeal unless it clearly appears that the discretion has been abused. Washington v. State, 259 Ala. 104, 65 So.2d 704; Maund v. State, 254 Ala. 452, 48 So.2d 553; McDowell v. State, 238 Ala. 101, 189 So. 183.

We have studied this record with great care and have considered all questions posed by the record, practically all of which are

raised in brief by counsel for appellant. We find no reversible error.

Affirmed.

LAWSON, SIMPSON and GOODWYN, JJ., concur.

The application for rehearing is overruled.

All the Justices concur except STAKELY, J., not sitting.