323 So.2d 731

**Bud Dallas HORTON, Jr.**

v.

**STATE.**

**8 Div. 635.**

Court of Criminal Appeals of Alabama.

Dec. 9, 1975.

Crenshaw & Minor, Montgomery, for appellant.

William J. Baxley, Atty. Gen., and C. Lawson Little, Asst. Atty. Gen., for the State.

HARRIS, Judge.

Appellant was convicted of murder in the second degree and sentenced to twenty years imprisonment in the penitentiary. At arraignment and trial he was represented by retained counsel. He pleaded not guilty. After conviction he gave notice of appeal. The court found him to be indigent and he was furnished a free transcript, and trial counsel was appointed to represent him on appeal. Trial counsel did not file a brief and this court appointed counsel to represent appellant.

There is very little conflict in the evidence. On Sunday, November 10, 1974, the deceased was in a car driven by one Donald Edwards. The deceased asked Edwards to pick up his two sons and carry them to their grandmother's house. On the way they had to pass appellant's house. The deceased asked Edwards to stop and he would go in appellant's house and get something to drink.

According to the testimony of Billy Joe Holder, the twelve year old son of the victim, his father got out of the car and went to the door of appellant's house and knocked and went inside. In a matter of minutes his father came back out and said he couldn't get anything to drink. The deceased then began to throw rocks at the house. Appellant's wife came out of the door of the house with a pistol and started shooting at the victim who was standing by Edwards' car. She fired three shots at the deceased but there was no evidence that she actually shot him.

Billy Joe further testified that then appellant came out of the house and fired two or three shots directly at the deceased. Billy Joe was in the back seat of the automobile with his younger brother when the shooting was going on. When the shooting was over, Billy Joe raised up from the back seat of the car and saw his daddy lying on the ground. Appellant walked to the car and told them to take the man away. Edwards and the two boys picked up the victim and put him in the car and carried him to his mother's home where he died before the ambulance arrived.

The testimony of Wayne Holder and Donald Edwards were essentially the same as that of Billy Joe Holder.

The state adduced testimony that the deceased suffered a fatal wound from a bullet fired from a .25 caliber automatic pistol and that the slug removed by the Toxicologist from the liver of the deceased matched a test bullet fired from the .25 caliber pistol produced by appellant and which he admitted he fired twice at the deceased.

Leon Green testified that he was an investigator for the Madison County Sheriff's Office and was dispatched to conduct an investigation of the shooting. He went to appellant's home with some other officers and he identified himself and the other officers. There were six or seven black males and a black female inside the house. Green advised each person present of his *Miranda* rights by reading the rights from a card. He asked who was the owner of the house and appellant said he was the owner. Green took appellant and his wife in the kitchen and they sat down at a kitchen table where Green again gave each of them, separately, the rights from the *Miranda* card.

Appellant and his wife made a statement to Green. Appellant stated that he was in the den playing cards and he heard some shots. He went out on the porch, saw his wife shooting, and he pulled a gun and shot the deceased.

A search of the premises revealed six packs of empty beer cans and a large quantity of wine. A black male was passed out on the couch in the den.

Appellant and his wife were carried to the county court house where they were, separately, given the *Miranda* rights again. They were asked if they understood their rights and both said they did. They were asked if they would write a statement. They replied they would make a statement but requested the officer to write the statements as they dictated what happened. Separate, signed statements were taken from appellant and his wife.

A voir dire hearing was had out of the presence and hearing of the jury to determine the voluntary character of each statement. At the conclusion of the hearing the court ruled that the confessions were voluntary but that appellant's confession only would be admitted.

When the jury returned, the state laid the proper predicate and appellant's confession was read to the jury. This confession is as follows:

"A. 'Voluntary Statement. Date, 10 November, 1974. Time, 5:41 P.M. Place, Huntsville, Alabama. I, Bud Dallas Horton, Jr., am 35 years of age and my address is Route 2, Box 455, New Market, Alabama. I have been advised and duly warned by Leon Green who has identified himself as an investigator of the Madison County Sheriff's Department of my right to counsel before making any statement and I do not have to make any statement at all, nor incriminate myself in any manner. I hereby expressly waive my right to the advice of counsel and voluntarily make the following statement to the aforesaid person knowing that any statement I may make may be used against me on the trial or trials for the offense or offenses concerning which the following statement is herein made. I declare that the following statement is made of my own free will without promise of hope or reward coercion, favor or offer of favor, without leniency or offer of leniency by any person or persons whomsoever.

"Around noon today I was in the den at my house playing cards with Lonnie Drake, Ruby Lee Miller and her man Hammonds. I heard the glass break in the den window, it fell all over us. I got up and ran out to the front to see what was happening. I ran out on the porch where my wife was and seen a man named Bill throwing rocks at the house. After I saw the window break in the den and as I was running to the door I heard shots, I heard two shots. After I got outside I told Bill not to do that. When he threw again I shot at him two times. Bill fell down behind the blue Falcon. I told the man that Bill was with to get him out of there and get him to a hospital. The man and two boys got Bill in the car and took off. I didn't see Willie Mae shooting but Bill fell after I shot at him. Bill has been to my house before two or three times and didn't cause any trouble. I don't know if the man was drunk or not. I have read this statement consisting of one page and I affirm to the truth and accuracy of the facts contained therein. This statement was completed at 3:53 P.M. on the 10th day of November, 1974, and signed." Signature of person giving voluntary statement, Bud Dallas Horton, Jr., and witnessed by Leon Green and Herman Daniels."

Appellant testified that he was in the den playing cards and he heard glass falling in the house, and some shooting. He ran to the front door and when Mr. Holder raised up from behind the car, he shot

him and saw him fall. He further testified that he did not know the deceased was throwing rocks at the house until after the deceased was shot, although his statement given to the police shows otherwise. He stated he did not know his wife had shot at Mr. Holder until the shooting incident was over.

Appellant admitted that he had been drinking before the shooting. The investigating officer corroborated this admission by appellant and that he smelled strongly of the odor of alcohol but he was not drunk.

Lonnie Drake testified for the defense. He said he was in the den playing cards with appellant when the window glass broke and that appellant got up and went to the front of the house and Drake followed him. He stated he heard appellant say to the deceased, "Don't do that." Then Drake saw the deceased raise up from behind the car and appellant shot him.

Eddie Whitman, a defense witness, testified that a man came into appellant's house and appellant's wife asked, "What you doing, who told you to come in here? You ain't never knocked on the door or nothing." The deceased replied, "———— ————, the door is open, I'm in here." She ordered the deceased out of the house and he left.

About five or ten minutes later a Martin girl saw the deceased in the yard of appellant's home and he told her to go in the house and "tell that ———— ———— black nigger to come out here, I want to talk to him." Appellant's wife went to the door and he heard glass flying, and then he heard some shots. Whitman further testified that he saw appellant shoot Mr. Holder.

No witness, either for the state or the defense, testified that the deceased was armed.

■ The sufficiency of the evidence is not before us for review. There was no motion to exclude the state's evidence on the ground the state failed to make out a prima facie case; there was no motion for a new trial; there was no request for the affirmative charge, and no exceptions were reserved to the oral charge of the court. *Moore v. State,* 50 Ala.App. 616, 282 So.2d 56; *Twitty v. State,* 50 Ala.App. 246, 278 So.2d 247; *Wilcox v. State,* 54 Ala.App. 474, 309 So.2d 510.

■ Counsel is allowed wide latitude in commenting on the evidence and in arguing reasonable inferences which may be drawn from the evidence. *Davis v. State,* 49 Ala.App. 587, 274 So.2d 360; *Carroll v. State,* 36 Ala.App. 59, 52 So.2d 171; *Cross v. State,* 68 Ala. 476.

■ Appellant, in brief, complains that the closing argument of the District Attorney was highly improper and prejudicial to the rights of appellant. We have carefully read this entire record and the language of the District Attorney of which complaint is made simply does not appear in the record. This is conceded by appellant. We are, thus, left in the dark as to whether the District Attorney transcended the boundaries of legitimate argument.

In *Brown v. State,* 50 Ala.App. 471, 280 So.2d 177, this court said:

"It is generally held that improper argument of counsel is not subject to review unless there is due objection or a motion to exclude, and a ruling thereon by the court, or a refusal of the court to make a ruling. *Nichols v. State,* 267 Ala. 217, 100 So.2d 750; *White v. State,* 40 Ala. App. 378, 114 So.2d 325. An exception to this rule exists in the case of ineradicable harm, and if this occurs, it should be brought to the trial court's attention by a motion for a new trial. *Alday v. State,* 42 Ala.App. 21, 151 So.2d 220."

As we have pointed out there was no motion for a new trial.

We find no error in the record, and the judgment of conviction is affirmed.

Affirmed.

All the Judges concur.