On January 1, 1984, Mary Dossey was shot while deer hunting with her husband. She died at the hospital that same day. Her husband, Roy Loid Dossey, was indicted and convicted for her murder. He was sentenced to ninety-nine years' imprisonment and ordered to pay $1,000 to the Criminal Victims' Compensation Fund.
 I
Six photographs of the area in the woods where the defendant found his wounded wife were properly admitted into evidence. Alabama Department of Public Safety Investigator C.W. Gibson testified that he took these photographs at the direction of Deputy Sheriff Rickie Walker. Gibson identified each photograph as "truly and accurately depict[ing] the scene as it existed at the time [he] took it." Defense counsel's objections to Gibson's testimony concerning the photographs were sustained because Gibson, in identifying the photographs, was testifying to hearsay information Deputy Walker had obtained from the defendant: e.g., "I took one [photograph] where the truck was at in this direction toward where he said, where Deputy Walker pointed out Mr. Dossey said Mary's shotgun was at, in this direction."
After the objections were sustained, the State recalled Deputy Walker to testify. Walker had previously testified that the defendant had showed him where Mrs. Dossey had been shot. The defendant led the Deputy to the scene and identified the area. On recall, the Deputy testified that Gibson took the photographs of the scene "for him" and identified each photograph as depicting what the defendant had indicated; i.e., "They are pictures of where Mr. Dossey advised me that he had his truck."
At trial, defense counsel's objections to the photographs were either general with no ground stated or were based on hearsay. On appeal, the defendant argues that the State did not establish that the photographs correctly depicted the scene at the time they were taken. Based upon this Court's review of the record as set forth above, we find this contention without merit. The photographs were properly admitted into evidence after a proper and sufficient predicate, even if objection sufficient to preserve this alleged error for appeal had been made.
 II
It is argued that the prosecutor's comment on the defendant's failure to call his insurance agent as a witness constitutes reversible error.
At trial, in his opening statement, the prosecutor stated that the primary motive for the murder of Mrs. Dossey was over $300,000 in insurance, which the defendant had taken out within four months of her death. In reply, in his opening statement, defense counsel remarked: "And we will explain to you as best we can with the people available the purpose and the intent of the insurance and how that it came to be." *Page 664 
At trial, in his own defense, the defendant testified to the insurance he had covering his wife. At one point, he stated, "Mary's policy was backdated to reduce the premium. Mr. Mellish can testify to that." And again, at another point, in answer to the prosecutor's question, the defendant stated: "I'm sure if you ask Mr. Mellish he will tell you what date it was taken out." The defendant also testified that he "didn't intend on her getting any insurance until Mr. Mellish asked about it."
In addition, the defendant testified to what Roy Conner, another insurance agent, had "always told us." At trial, no insurance agent was called as a witness by either the State or the defense.
In his closing argument to the jury, defense counsel stated: "So it's not disputed. It's just a [insurance] program they [the defendant and his wife] were following and based on the advice of the people who are supposed to be knowledgeable in these things and who advised them about what's the best thing to do because this one man came over to the home of these people and there Mary Dossey submitted this application and took this insurance. That's a fact in the case of insurance."
Following this, in his closing argument to the jury, the prosecutor commented on the absence of the insurance agent as a witness:
"Who stood to gain the most? Her husband.
 "They have no children, they have no foster children in the home. Why does he wait until August or September to purchase an additional three hundred and something thousand dollars worth of insurance? Why?
"Did he give you an explanation? No.
 "He gave you some bumbling story about some insurance agent doing this and insurance agent doing that.
 "Where is the insurance agent to come up and tell you he devised that plan for —."
The following then occurred:
 "MR. LINDSEY [Defense Counsel]: We object to that. They had the agent subpoenaed here themselves. If they wanted to hear from him they could put him on the stand and ask him.
 "MR. LINDSEY [sic]: I submit to you, ladies and gentlemen —
"THE COURT: Objection overruled.
"MR. LINDSEY: We except.
"THE COURT: Yes, sir.
 "MR. THORNTON [Assistant District Attorney]: I made that argument to you because Mr. Lindsey in his opening statement told you he was going to bring those insurance people up here and explain those policies to you and explain to you all about that insurance.
"I didn't hear them.
"Did you hear them?
"I submit to you you did not.
 "MR. LINDSEY: We still want our objection, if the Court please.
 "THE COURT: Yes, sir. You have already had your objection and its been overruled, Mr. Lindsey.
"MR. LINDSEY: We except."
A part of the defendant's motion for new trial was the affidavit of Jim Mellish, an insurance agent. In the affidavit, Mellish states that he "was subpoenaed by both the State of Alabama and the defense attorney, Gareth Lindsey, but did not testify even though my testimony would have clarified all the issues regarding Roy and Mary Dossey's life insurance benefits."
"It is the settled law in this State that no unfavorable inference can be drawn, and no unfavorable argument to a jury made, by counsel against a party to a cause because of the failure to call a witness to testify, when that witness is accessible to both parties, and can be introduced by and examined by either party." Kissic v. State, 266 Ala. 71, 76,94 So.2d 202, 207 (1957). Although the prosecutor's remark apparently violates this "settled law," the comment was justified as a reply in kind. "[A]rgument of counsel that, in fact, is a reply in kind to an earlier argument of opposing counsel would not be subject to objection, even though such argument otherwise would be impermissible." Ex parte *Page 665 Rutledge, 482 So.2d 1262 (Ala. 1984) (emphasis in original).
The opening statement of defense counsel promising to explain "the purpose and intent of the insurance and how that it came to be," and the defendant's own statements from the witness stand that the insurance agent "can testify to that," coupled with his several remarks about what his insurance agents had told him, were "an invitation to the prosecution to comment on the defense theory." United States v. Broadhead, 413 F.2d 1351,1363 (7th Cir. 1969), cert. denied, 396 U.S. 1017,90 S.Ct. 581, 24 L.Ed.2d 508 (1970). The prosecutor's remarks were not improper because they were occasioned by and in reply to the statements of both defense counsel and the defendant. See generally 23A C.J.S. Criminal Law § 1108 (1961).
"Counsel may comment on the failure of his adversary to produce evidence . . . when the comment is pertinent to answer an argument made by opposing counsel." Jarrell v. State,251 Ala. 50, 56, 36 So.2d 336, 341 (1948). The prosecutor has a right to comment on and answer statements made by defense counsel in argument to the jury. Dollar v. State, 26 Ala. App. 361,159 So. 704 (1935); Moragne v. State, 16 Ala. App. 26, 28,74 So. 862, 864, reversed on other grounds, 200 Ala. 689,77 So. 322 (1917). Counsel should be afforded wide latitude in responding to assertions made by opposing counsel in previous argument. York v. State, 34 Ala. App. 188, 190, 39 So.2d 694,696 (1948), cert. denied, 252 Ala. 158, 39 So.2d 697 (1949). "Wide latitude is given the solicitor in making reply to argument previously made by appellant's counsel." Moody v.State, 40 Ala. App. 373, 374, 113 So.2d 787, 788 (1959). "[W]ide latitude is given a district attorney in making reply in kind, . . . and the propriety of argument of counsel is largely within the trial court's discretion." Jetton v. State,435 So.2d 167, 171 (Ala.Cr.App. 1983).
Considering the prosecutor's comments within the context of the entire trial and especially with regard to their responsiveness to the prior argument of defense counsel and the previous comments of the defendant, we find no error in the action of the trial court in overruling the defendant's objections.
 III
The defendant argues that he was denied the effective assistance of counsel at trial because retained trial counsel, Gareth A. Lindsey, (1) took no photographs at the scene of the homicide and never went to the scene with the defendant; (2) did not talk to his witnesses until the day of trial and had the defendant subpoena his own witnesses; (3) did not move for a change of venue; (4) did not question the jury venire on voir dire about their knowledge of the exhumation of his child who had died in an unrelated drowning incident; and (5) did not make any attempt to talk to the defendant's insurance agent, Jim Mellish, did not subpoena the insurance policies and did not question prospective witnesses Lynn Stricklin, Julia Stricklin, and Darrell Williams about the case.
The motion for new trial did not raise the issue of the ineffective assistance of counsel as one of its grounds even though appellate counsel, who is different from trial counsel, filed the motion.
Especially with regard to ground (5) above, it is significant that, in the motion for new trial, which was signed by appellate counsel, counsel alleged that "this evidence was discovered since the trial and could not have been discovered before trial by the exercise of due diligence."
Although trial counsel was the only witness to testify at the hearing on the motion for new trial, he was not called upon to answer any allegation of his alleged ineffectiveness.
The issue of trial counsel's competence was not raised at trial and, therefore, has not been preserved for review. Although trial counsel testified on the hearing of the motion for new trial, and even though the defendant had different counsel on that motion, the record contains no allegation that counsel was incompetent or ineffective *Page 666 
in handling the trial. Indeed, the very allegation contained in the motion for new trial that the evidence is newly discovered and "could not have been discovered before trial by the exercise of due diligence" contradicts any allegation of counsel's ineffectiveness. "'[C]laims of inadequate representation cannot be determined on direct appeal where such claims were not raised before the . . . [trial] court and there has been no opportunity to develop and include in the record evidence bearing on the merits of the allegations.'" UnitedStates v. Barham, 666 F.2d 521, 524 (11th Cir.), cert. denied,456 U.S. 947, 102 S.Ct. 2015, 72 L.Ed.2d 470 (1982). See alsoUnited States v. Irvin, 736 F.2d 1489, 1492 (11th Cir. 1984);Thomas v. State, 447 So.2d 203, 208 (Ala.Cr.App. 1984).
 IV
The trial court did not err in refusing to grant the defendant's motion for a new trial based on the affidavits of Julia and Lynn Stricklin, Jim Mellish, and Darrell Williams. Three of these witnesses were subpoenaed as defense witnesses at trial. This Court has serious doubts whether any of this evidence was either newly discovered or could not have been discovered by the exercise of due diligence. Chappell v. State,457 So.2d 995, 997 (Ala.Cr.App. 1984). Evidence tending merely to impeach or contradict a State witness as to the testimony given upon the trial is generally not such newly discovered evidence as would warrant the granting of a new trial. O'Pryorv. State, 237 Ala. 13, 13-14, 185 So. 374 (1938). In this case, the impeaching testimony would not tend "to destroy or obliterate the effect of the evidence upon which the verdict rested." Reynolds v. City of Birmingham, 29 Ala. App. 505, 507,198 So. 360, 362 (1940).
The finding in McDowell v. State, 238 Ala. 101, 106,189 So. 183, 186 (1939), applies here: "Conceding, without deciding that the movant showed the proper diligence, we can not say that this newly discovered evidence was such as to impress the trial court, who saw and heard the witnesses, or that this newly discovered evidence would have probably changed the result [of the trial]." See also Nichols v. State, 267 Ala. 217,228, 100 So.2d 750, 760-61 (1958).
There exists a presumption of correctness surrounding a trial court's overruling of a motion for new trial. Brooks v. State,248 Ala. 628, 631, 29 So.2d 4, 7 (1947). "The court's ruling on granting or denying a new trial is not to be disturbed save for gross abuse." Nickerson v. State, 283 Ala. 387, 390,217 So.2d 536, 539 (1969). A motion for a new trial on the ground of newly discovered evidence rests in the sound discretion of the trial court and its action will not be disturbed on appeal except where an abuse of discretion is clearly shown. Page v.State, 273 Ala. 5, 5-6, 130 So.2d 227 (1961).
 V
The State's evidence against the defendant, although circumstantial, was quite substantial. "[I]f presence at the time and place a crime is committed, in conjunction with other facts and circumstances, tend to connect the accused with the commission of the crime, then the jury may find the accused guilty." Dolvin v. State, 391 So.2d 133, 137 (Ala. 1980).
Mrs. Dossey was killed by a single shotgun blast which entered the left side of her back. The expert testimony concerning the nature and location of the wound and the possibility of an accidental discharge from that particular weapon under the circumstances of this case provided the jury with more than ample evidence to find that Mrs. Dossey was intentionally shot by another and was not the mere victim of an accident. Coats v. State, 253 Ala. 290, 294, 45 So.2d 35, 38
(1950). The account of the incident the defendant gave the investigating officers and his testimony at trial conflict in several significant areas with the State's expert testimony of how and where the accident occurred. State's witness Madeline Stricklin, the victim's sister, testified that the defendant told her he had killed his wife. Running like a thread throughout *Page 667 
the prosecution's case is the $300,000 in insurance the defendant would collect on his wife's death. See Spicer v. State, 188 Ala. 9,65 So. 972 (1914).
The prosecution proved that the defendant had the means, motive and opportunity to kill his wife. Whether the defendant's account of the killing was to be believed was a question only the jury could decide. Cumbo v. State,368 So.2d 871 (Ala.Cr.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979).
Because of the strength of the State's case, it is not necessary to set out all the evidence presented at trial. The State presented a prima facie case, and the evidence was sufficient to support the verdict of the jury.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.